(March 31, 1913.)

ANNA J. CLYDE, Appellant, v. CITY OF MOSCOW et al., Respondents.

[131 Pac. 381.]

MUNICIPAL LAW—IMPROVEMENT DISTRICTS—ORDINANCE OF INTENTION— CHARACTER OF IMPROVEMENT—TITLE TO ORDINANCE—ESTIMATED COST OF IMPROVEMENT—PAVING STREET INTERSECTIONS—STREET INTERSECTIONS WITH ALLEYS.

1. Under the provisions of sec. 4, chap. 81, of the 1911 Sess. Laws, it is the duty of the city council before entering upon the grading, paving, or improvement of a street, where the cost is to be assessed against the property benefited, to first pass an ordinance or resolution declaring the intention of the council to make such improvement, stating the names of the streets and alleys to be improved and the general character of the proposed improvement. It is a sufficient compliance with this statute for the city council to

pass an ordinance giving the names and description of the streets to be improved and the character of the improvement to be made, and reciting that the public interest and convenience demand that such improvement be made, and designating a time on or before which protests may be made and filed with the city clerk against such proposed improvement.

2. Title to Ordinance No. 361 of the city of Moscow examined and considered, and *held* sufficient to embrace the subject matter contained in the body of the ordinance.

3. Where an initial ordinance or an ordinance declaring the intention of the city council to make certain street improvements, in describing such improvement states that the streets shall be paved the full width thereof, which the plans show to be 56 ft., but the ordinance thereafter passed ordering and directing the work and providing the contract therefor shows that a portion of a certain street is to be paved to the width of 18 ft. only, *held,* that if such change is in any way fatal to the final ordinance and contract for doing the work, or is in any manner prejudicial to anyone, it can only be prejudicial to such persons as own property abutting on the portion of the street where the width of the pavement is reduced from that originally proposed.

4. Where the statute (sec. 16, chap. 81, 1911 Sess. Laws) provides that all contracts which are made by the city or village for any improvement authorized under such statute shall be made by the council in the name of the city, such statute is substantially complied with by the council passing and the mayor approving an ordinance providing for the contract and authorizing its execution and prescribing the terms and conditions thereof, and further providing that a formal contract shall be executed by the city and signed and attested by the mayor and city clerk.

5. Where a city ordinance providing for the paving of streets recites that the description and character of the improvement shall be a pavement done with "brick, asphalt, sheet asphalt, bithulithic, hassam, asphaltic concrete, asphalt macadam, or other standard pavement," and the contract made thereunder provided for a "Dolarway" pavement, and the evidence of the witnesses shows that "Dolarway" pavement is a standard pavement, *held,* that the contract is in conformity with the notice given in the ordinance and is covered by the term "standard pavement."

6. The provision contained in Ordinance No. 365 of the city of Moscow authorizing the mayor, by and with the consent of the council, to appoint a committee of three citizens and taxpayers of the city to aid and assist the mayor and city council, and be advisory to them in the construction of the improvements described

in the ordinance, is not fatal to the ordinance, and does not render the ordinance invalid.

7. An estimate in an initial ordinance or ordinance of intention reciting that the cost of paving the street together with curbs and curbing will be the sum of $2.10 per square yard throughout, will be held to include both the curb and paving, and such estimate will not prevent the city from contracting at a lower rate than the estimate so made.

8. Under the provisions of subd. 6 of sec. 2238, Rev. Codes, the expense of all improvements in the space formed by the junction of two or more streets, wherein one main street terminates in or crosses another main street, and all street crossings or cross-walks, shall be paid by the city, but this statute does not include spaces in streets opposite alleys or intersections with alleys, and the city at large is not required to pay for the paving of such portions of the street. Alleys are conveniences to the lots on which they abut and afford means of ingress and egress from the main streets to the rear of lot, and the paving of the street in front of such alleys should be borne by the improvement district rather than by the city.

APPEAL from the District Court of the Second Judicial District for Latah County. Hon. Edgar C. Steele, Judge.

Action to enjoin the city of Moscow from proceeding with certain municipal improvements. Judgment for the defendant. Plaintiff appealed. *Affirmed.*

Forney & Moore, for Appellant.

The ordinance must specify the nature, character, locality and description of the improvement; and, unless this is done, the improvement cannot be paid for by special assessment. (*Pells v. People,* 159 Ill. 580, 42 N. E. 784.)

The title to the ordinance is insufficient, because it says that it is "an ordinance providing for the paving and curbing" of certain streets, whereas it should be an ordinance declaring the intention of the council to make such improvement. (Rev. Stats., sec. 2276; 28 Cyc. 380; *State v. St. Louis,* 161 Mo. 371, 61 S. W. 658; *Cantril v. Sainer,* 59 Iowa, 26, 12 N. W. 753.)

If the notice afforded by the initial ordinance is not sufficient, all proceedings thereafter are void. (2 Smith, Modern

Law of Mun. Corp., sec. 1130; *San Jose Imp. Co. v. Aurzarias,* 106 Cal. 498, 39 Pac. 859.)

The council cannot give the property owners notice of one kind of an improvement and then make another kind. A property owner might be satisfied with the improvement as described in the initial ordinance or notice to him, and, on the other hand, might desire to protest strenuously against the improvement as it was ordered. (28 Cyc. 1009; *Stockton v. Whitmore,* 50 Cal. 554; *Dougherty v. Hichcock,* 35 Cal. 512; *Smith v. Chicago,* 214 Ill. 155, 73 N. E. 346; *Trenton v. Collier,* 68 Mo. App. 483; Page & Jones, Taxation by Assessment, sec. 510; *Opening of Orange Street,* 50 How. Pr. (N. Y.) 244.)

Since the improvement to be constructed must correspond substantially to the description in the ordinance or resolution, a substantial change in the nature and character of the improvement made after proceedings have been instituted invalidates the proceedings and renders the assessment void. (2 Page & Jones, Taxation by Assessment, sec. 841; *Kutchin v. Engelbret,* 129 Cal. 635, 62 Pac. 214; *City of Paxton v. Bogardus,* 201 Ill. 628, 66 N. E. 853; *McPike v. City of Alton,* 187 Ill. 62, 58 N. E. 301; *Auditor General v. Stoddard,* 147 Mich. 329, 110 N. W. 944.)

"Dolarway" pavement, for which a contract was let, does not describe the general character of the proposed improvement with sufficient particularity as the law requires. (*Young v. People,* 196 Ill. 603, 63 N. E. 1075; *Hawthorne v. City of East Portland,* 13 Or. 271, 10 Pac. 342; *Ladd v. Spencer,* 23 Or. 193, 31 Pac. 474; *Buckley v. City of Tacoma,* 9 Wash. 253, 37 Pac. 441; *Schwiesau v. Mahon,* 128 Cal. 114, 60 Pac. 683; *Fay v. Reed,* 128 Cal. 357, 60 Pac. 927; *Bay Rock Co. v. Bell,* 133 Cal. 150, 65 Pac. 299; *Williamson v. Joyce,* 137 Cal. 107, 69 Pac. 854; *Crouse v. Barrows,* 156 Cal. 154, 103 Pac. 894; *McDonald v. Gillon,* 134 Cal. 329, 66 Pac. 314.)

The ordinance of intention in this case refers to plans and specifications *"thereafter to be adopted,"* conclusively showing that this case does not fall within the case of *Williams v. Caldwell,* 19 Ida. 514, 114 Pac. 519. (See, also, *Bay Rock*

*Co. v. Bell, supra; Young v. People,* 196 Ill. 603, 63 N. E. 1075.)

The authorities all define the word "street" as a general term applicable to all city thoroughfares, including "alleys" as well as "streets." The language of the statute would imply that the first portion referred to minor streets or alleys and the second portion referred to main or principal thoroughfares or "streets." (*Kalteyer v. Sullivan,* 18 Tex. Civ. App. 488, 46 S. W. 288; *Indianapolis v. Miller,* 168 Ind. 285, 80 N. E. 626, 8 L. R. A., N. S., 822; *Osage City v. Larkin,* 40 Kan. 206, 10 Am. St. 186, 19 Pac. 658, 2 L. R. A. 56.)

George G. Pickett and William M. Morgan, for Respondents.

It was the legislative intent that the municipality should pay the expense of improving the intersections of the main thoroughfares, and that the remainder of the improvement shall be paid by the improvement district. The word "alley" is not synonymous with the word "street." (7 Words & Phrases Judicially Defined, pp. 341, 343; *Paul v. City of Detroit,* 32 Mich. 108; *Beecher v. People,* 38 Mich. 289, 31 Am. Rep. 316; *Bagley v. People,* 43 Mich. 355, 38 Am. Rep. 192, 5 N. W. 415; *In re Application of Woolsey,* 95 N. Y. 135.)

As to the sufficiency of the title to Ordinances 361, 362 and 365, we cite *Village of Saint Anthony v. Brandon,* 10 Ida. 205, 77 Pac. 322 and *State v. Calloway,* 11 Ida. 719, 114 Am. St. 285, 84 Pac. 27, 4 L. R. A., N. S., 1109.

A variance which is not prejudicial to the property owners does not invalidate the contract or assessment. (Page & Jones on Taxation and Assessment, sec. 511, p. 794.)

The burden is upon appellant to show that the variance was to the detriment of property owners, and appellant has not even sought to make any such showing. (*Dement v. City of Caldwell,* 22 Ida. 62, 125 Pac. 200.)

The word "roadway" as set out in the ordinance and the contract "means only the way between the sidewalks." (Elliott on Roads and Streets, sec. 643, and cases cited under

notation 26; 7 Words & Phrases Jud. Defined, 6275, under heading of "Roadway.")

AILSHIE, C. J.—This action was brought by a property owner and taxpayer within an improvement district in the city of Moscow, for the purpose of procuring an injunction against the city authorities restraining them from proceeding with a pavement contract. The district court denied the relief sought, and this appeal has been prosecuted.

A great many errors have been assigned, going to the sufficiency and regularity of the ordinances passed by the city providing for the improvement involved in this case. It is contended that the first ordinance looking to this improvement, No. 361, was not a proper or sufficient ordinance declaring the intention of the city to make the contemplated improvement, and that in fact there was no ordinance of intention to improve as provided for and required by sec. 4, chap. 81, of the 1911 Sess. Laws (1911 Sess. Laws, p. 268). That section of the statute, among other things, provides as follows:

"The city council or trustees shall, before or during the grading, paving, or other improvement of any street or alley, the cost of which is to be levied and assessed upon the property benefited, first pass at a regular or special meeting, a resolution or ordinance declaring its intention to make such improvement, and stating in such resolution or ordinance the name of the street or alley to be improved, the points between which said improvement is to be made, the general character of the proposed improvement, . . . ."

The ordinance here in question, No. 361, after setting out the title and describing the streets to be paved, has this further recital introductory to the enacting clause: "Whereas, the public interest and convenience require and demand that such improvements be made upon the hereinbefore described streets, between the points thereon herein set forth, in the manner hereinafter ordered, now, therefore, be it ordained by the mayor and city council," etc. The ordinance further provides in sec. 5 thereof that "any person or persons, company

or corporation, being the owner of any of the lots or lands or parcels of lots or lands, abutting, fronting, contiguous or tributary to the streets or portions of the streets in section 1, of this ordinance, . . . . which would be or is affected by such improvement, . . . . who desire to file protest or protests against said proposed improvements, as in this ordinance mentioned and set forth, shall on or before the 15th day of June, A. D. 1912, file such protest or protests in the office of the city clerk of the city of Moscow, Idaho, to be thereafter taken up and heard by the mayor and city council." While this ordinance in part declares unqualifiedly that the city will make the improvements, it also in other portions thereof gives notice to the property owner that an opportunity for a hearing will be accorded and that protests are invited. The ordinance was in fact passed, and reads as if it were intended as a permanent ordinance, but it conforms to the requirements of the statute, except as to the formal notice and directions which such an ordinance might contain. We are satisfied, however, that it substantially complied with the statute, and gave the property owners all the notice that any ordinance could give them under the statute, and that their rights were in every respect protected under this ordinance.

The next objection made is that "the initial ordinance No. 361, in describing the improvement of Main street, states that the street shall be paved the full width thereof, which the plans show as 56 feet, but the ordinance ordering the work and the contract show that on the south end of the street the pavement has been cut down to a width of 18 feet. This the council has no power to do. They cannot give the property owner notice of one kind of improvement and then make another kind." In support of this contention counsel cite a number of authorities    (28 Cyc. 1009; *Stockton v. Whitmore,* 50 Cal. 554; *Smith v. Chicago,* 214 Ill. 155, 73 N. E. 346; *Trenton v. Collier,* 68 Mo. App. 483; Page & Jones, Taxation by Assessment, sec. 510; *Pells v. People,* 158 Ill. 580, 42 N. E. 784; *Kutchin v. Engelbret,* 129 Cal. 635, 62 Pac. 214; *City of Paxton v. Bogardus,* 201 Ill. 628, 66 N. E. 853; *Auditor General v. Stoddard,* 147 Mich. 329, 110 N. W. 944), many of

which seem to be in point on the proposition suggested. It is argued by counsel for respondent that the law does not require that the initiatory ordinance give the width of the street, but merely the ''general character of the proposed improvement,'' and that the statement in the initiatory ordinance that the street was to be paved the width of 56 feet was surplusage and not binding or conclusive on the mayor and council, and that they might pass their final ordinance and let their contract for a less width. However this may be, it does not appear to us that the objection is well taken in the present case, for the reason that the change in the width of this pavement only affects one street for a distance of about 400 feet and within that distance there are no street crossings. It is clear to us that this change could make no difference with anyone other than a property owner abutting on the particular portion of the street in which the reduction in width of pavement is made. This change would make no difference with any other property owner either in the amount of his assessment or the benefits which he might receive from the improvement or the use of the street. On the other hand, we can readily understand why it might affect a property owner whose property abuts on the particular portion of the street in which the change is made. A man might be willing to have the street paved in front of his property, provided the pavement would come up to the curb or sidewalk so as to give him free and easy ingress and egress. On the other hand, he might seriously object to having a strip of 18 feet paved down the center of the street and leave him a mudhole between his property and the pavement, and consequently make it even more difficult for him to get in and out than it would have been without any pavement at all. It does not appear in the present case, however, that the party complaining owns property abutting on this particular portion of the street or which would be affected by this particular change, and the objection is not based on that ground.

The contention that the title to Ordinance No. 361 is not sufficient is not well taken. The title states the general purpose of the ordinance and meets the substantial requirements

of the statute. (Sec. 2276, Rev. Codes; *Village of St. Anthony v. Brandon,* 10 Ida. 205, 77 Pac. 322; *State v. Calloway,* 11 Ida. 719, 114 Am. St. 285, 84 Pac. 27, 4 L. R. A., N. S., 1109.)

Complaint is made that the contract was not entered into by the city council, but, on the contrary, was entered into by the mayor and city clerk. The statute, sec. 16, chap. 81 of the 1911 Sess. Laws, provides that, "All contracts which are made by the city or village for any improvements authorized by this section, or any subdivision thereof, shall be made by the council in the name of the city or village." Now, in this case the council by its Ordinance No. 365 provided that a contract should be entered into, and in effect made the contract on the part of the city by and through this ordinance. It merely authorized the formal signing and executing the same by the mayor and city clerk. These acts, however, were merely the acts of the council, evidenced by their duly constituted representatives, the mayor and the city clerk.

The description of the work to be done and the improvement to be made as contained in Ordinances Nos. 361 and 365 was sufficient to apprise property owners of the "general character" of the work, and was a substantial compliance with the statute. It has been argued, however, that since the ordinance did not enumerate "Dolarway" pavement as one of the possible classes of pavement that might be used or as a "standard pavement," that to contract for that kind or class was therefore a violation of the ordinance. The ordinance provided, among other things (sec. 1, Ordinance 361), that the pavement should be done with "brick, asphalt, sheet asphalt, bithulithic, hassam, asphaltic concrete, asphalt macadam, or other standard pavement." The city introduced two experts. (Ashton and Wycoff), who testified that "Dolarway" is a "standard pavement." This was a question of fact, and the evidence seems to sustain the contention that "Dolarway" is a standard pavement and that it falls within the provisions of sec. 1 of the ordinance.

Objection has also been urged against that provision of Ordinance No. 365 which authorizes the mayor, by and with the consent of the council, to "appoint a committee of three

citizens and taxpayers of said city to aid and assist the mayor and city council and be advisory to them in the construction of the improvements in this ordinance made and provided for.'' We fail to see wherein this provision of the ordinance and action of the council was in any way fatal to the ordinance or to the contract for payment. It appears that the contract was actually made by the mayor and council, and that the business is to be conducted and transacted on the part of the city by the mayor and council and such officers as may be authorized by law and the city council to transact such business. The selection of this committee in an advisory capacity only could in no way invalidate an action which was otherwise legal.

The objection that the contract was awarded prior to the completion and confirmation of the assessment-roll is not well taken. It cannot become a consummated binding contract until such time as all the preliminary provisions of the ordinance are complied with and the necessary statutory conditions precedent to the consummation of the contract are complied with. As a matter of fact, our attention has not been called to any place in the record showing that the contract was really let before the completion of the assessment-roll.

Complaint is made that Ordinance No. 361 contained no estimate as to the necessary cost for curbing. That ordinance provides that the estimated cost of paving a street together with curbs and curbing will be the sum of $2.10 per square yard throughout. By this it was evidently intended to include curbing in measuring width of paving, and that the number of square yards of curbing and paving should be computed together, and that the estimated cost should not exceed $2.10 per square yard. This ordinance of intention to improve did not commit the city to pay that much if it could finally secure a better and more favorable price.

Considerable argument was indulged in over the provision of subd. 6 of sec. 2238 of the Rev. Codes, which deals with the subject of paving street intersections. That provision is as follows: ''The expense of all improvements in the space

formed by the junction of two or more streets or wherein one main street terminates in or crosses another main street, and also all street crossings or cross-walks, shall be paid by such city or village.'' The same subdivision provides that the cost of all work and improvements for street pavements shall be assessed upon the lots and land fronting thereon. In the ordinances under discussion here, the council provided for the payment by the city at large for street intersections, but makes no specific provision for that part of the street immediately opposite and abutting on an alley.

It is argued by appellant that the ordinance is defective in not providing for the paving of the intersection of alleys with streets. Counsel for the respondent contends that subd. 6 of sec. 2238 does not contemplate the payment for alley intersections by the city, but that such intersections are paid for by the improvement district the same as any other part of the street pavement. An alley is clearly a convenience and benefit to the abutting lots only, and it is not a general convenience of necessity to the city at large. It follows, therefore, that the pavement of that part of the street immediately in front of an alley or abutting on an alley should be paid for by the property owners. If, therefore, the pavement of this part of the street is paid for out of the general fund of the improvement district, the expense thereof will in the last analysis fall upon the property receiving the benefit. It was not necessary and, indeed, would not have been within the contemplation of the statute, to provide by ordinance for the city paying for paving the spaces included in intersections of streets with alleys.

We find no reason for reversal of the judgment of the trial court in this case. The judgment should be affirmed, and it is so ordered. Costs in favor of respondent.

Sullivan and Stewart, JJ., concur.