Points Decided.

(April 21, 1916.)

## J. W. CALDWELL, Appellant, v. THE VILLAGE OF MOUNTAIN HOME et al., Respondents.

[156 Pác. 909.]

CITIES AND VILLAGES—SEWER DISTRICTS—PLEADING—CHANGE IN PLAN—CONTRACT—LOWEST BIDDER.

1. Certain ordinances of the village of Mountain Home, together with the estimate, plan and outline therein referred to, examined and held to be sufficient to conform to the provisions of sec. 2353, Rev. Codes, as amended, which require a city council, or board of village trustees, before or during the construction of a sewer system or sewage disposal works, the cost of which is to be assessed and levied upon the property to be benefited thereby, to first pass an ordinance declaring its intention to construct such system, or works, stating, among other things, the specific boundaries of the proposed district so that it may be plainly determined therefrom what property or properties are to be included therein; also the general character of the proposed system, or works, and the estimated cost thereof.

2. While it is a well-settled rule that pleading an instrument by attaching a copy to a complaint or an answer as an exhibit thereto does not tender an issue or involve an assertion of the truth of the statements and recitals contained in the exhibit, it does constitute an allegation of the existence of the instrument at the time and place and for the purpose alleged.

3. The general rule that a demurrer admits the truth of all material and relevant facts which are well pleaded does not apply to facts which appear unfounded by a record incorporated in the pleading, or by a document referred to, nor to general averments contradicted by more specific averments.

4. A change in the plan of construction of a sewer system and sewage disposal works which does not increase the cost and which has not resulted, and will not result, in injury to anyone, and particularly to the appellant, does not constitute such a departure from the plan referred to and described in the ordinance of intention as will render the proceeding void.

5. A property owner who has failed to protest against the creation of an improvement district, as by statute provided he might do, or against the inclusion of his land therein, or the exclusion of that of others therefrom, must be held to have waived any right

he had to object to the district as constituted, and cannot enjoin the payment for the improvement upon the ground that his property was included while that of others similarly situated was not.

6. The law which governs the letting of contracts for the construction of improvements provided for in chap. 14, title 13, of the Political Code is to be found in sec. 2354, Rev. Codes, and does not require the committee having the work in charge to let it to the lowest responsible bidder, and the fact that it did not do so, but awarded it to another, does not affect the obligation to pay for the improvement.

[As to who are lowest bidders, see note in 50 Am. St. 492.]

APPEAL from the District Court of the Fourth Judicial District, for Elmore County. Hon. James R. Bothwell, Judge.

Suit to enjoin the construction of, and payment for, a sewer system and disposal works. Judgment for defendants. *Affirmed.*

W. C. Howie, for Appellant.

The warning ordinances must particularly describe the works to be constructed, must be clear and specific, and, above all, must be clear, definite and not misleading, so that the taxpayer may be able to determine, either from the ordinance itself or from it and the plats or other data specifically referred to in the ordinances, just what is proposed to be constructed. The provisions must not be conflicting, or misleading, nor such as will either mislead or deceive the people into believing that the system will be one thing, while the system to be constructed differs therefrom in any material matter. (*Williams v. City of Caldwell,* 19 Ida. 514, 114 Pac. 519; *Dement v. City of Caldwell,* 22 Ida. 62, 125 Pac. 200; *Platt v. City of Payette,* 19 Ida. 470, 114 Pac. 25; *Coughanour v. City of Payette,* 26 Ida. 280, 142 Pac. 1076; *Ostrander v. City of Salmon,* 20 Ida. 153, 117 Pac. 692; *Gurley v. City of New Orleans,* 124 La. 390, 50 So. 411; *Ladd v. Spencer,* 23 Or. 193, 31 Pac. 474; *Dyer v. City of Bandon,* 68 Or. 406, 136 Pac. 652; *Bay Rock Co. v. Bell,* 133 Cal. 150, 65 Pac. 299; *Lambert v. Cummings,* 2 Cal. App. 642, 84 Pac. 266; *William-*

son v. Joyce, 137 Cal. 107, 69 Pac. 854; Haughawout v. Raymond, 148 Cal. 311, 83 Pac. 53; Crouse v. Barrows, 156 Cal. 154, 103 Pac. 894; Barber Asphalt Co. v. Crist, 21 Cal. App. 1, 130 Pac. 435; Chase v. Trout, 146 Cal. 350, 80 Pac. 81; City of Lawrenceville v. Hennessey, 244 Ill. 464, 91 N. E. 670; Holden v. City of Chicago, 172 Ill. 263, 50 N. E. 181; City of Jackson v. Williams, 92 Miss. 301, 46 So. 551; Whittaker v. City of Deadwood, 23 S. D. 538, 139 Am. St. 1076, 122 N. W. 590; Coulter v. Phoenix Brick & Con. Co., 131 Mo. App. 230, 110 S. W. 655; Barber Asphalt Co. v. O'Brien, 128 Mo. App. 267, 107 S. W. 25; Fellows v. Dorsey, 171 Mo. App. 289, 157 S. W. 995.)

If a change was made, which would injure any of the parties to be affected, it would render it void. (Barton v. Kansas City, 110 Mo. App. 31, 83 S. W. 1093; In re Scranton Sewer, 213 Pa. St. 4, 62 Atl. 173; Church v. People, 179 Ill. 205, 53 N. E. 554, 174 Ill. 366, 51 N. E. 747; Gardner v. City of Chicago, 224 Ill. 254, 79 N. E. 624.)

Where the law requires the contract submitted to competitive bids, if not let to the lowest responsible bidder, it is void. (People v. City of Buffalo, 84 N. Y. Supp. 434; In re Delaware & H. Land Co., 8 N. Y. Supp. 352; Fourmy v. Township of Franklin, 126 La. 151, 52 So. 249; Armitage v. City of Newark, 86 N. J. L. 5, 90 Atl. 1035; Miller v. City of Oelwein, 155 Iowa, 706, 136 N. W. 1045.)

J. G. Watts, for Respondents.

"The general rule that a demurrer admits the facts well pleaded does not apply to facts which appear unfounded by a record incorporated in the pleadings, or by a document referred to." (3 Cyc. 337.)

No objection was raised by plaintiff, or by any other person to the boundaries of District No. 2, at the hearing before the board of trustees, when objections to the ordinance of intention were heard. The boundaries of said district were clearly defined in the ordinance, and the plaintiff should have presented his objections to the board. (Hildreth v. City of

*Longmont,* 47 Colo. 79, 105 Pac. 107; *Kansas City v. Richards,* 34 Mo. App. 521.)

A special assessment cannot be defeated upon the ground that the improvement was poorly or improperly constructed, unless the departure is such as to make the improvement a substantially different one from that provided for in the ordinance. (*Chicago v. Sherman,* 212 Ill. 498, 72 N. E. 396; *Warren v. Riddell,* 106 Cal. 352, 39 Pac. 781; *Shreve v. Cicero,* 129 Ill. 226, 21 N. E. 815; *Eustace v. People,* 213 Ill. 424, 72 N. E. 1089; *Chicago v. Ayers,* 212 Ill. 59, 72 N. E. 32; *Petter v. Allen,* 21 Ky. Law Rep. 1122, 54 S. W. 174; *Kansas City v. Askew,* 105 Mo. App. 84, 79 S. W. 483.)

"A property owner who stands by and permits an improvement to be made is usually held to be estopped from attacking the proceedings." (28 Cyc. 1014, 1085.)

"A city which has advertised for bids for the construction of sewers is not bound to accept the lowest bid made, in the absence of a requirement to that effect in its charter, the statute, or an express agreement to do so." (*Starkey v. City of Minneapolis,* 19 Minn. 203; *People v. Croton Aqueduct Board,* 49 Barb. (N. Y.) 259; Dillon, Municipal Corporations, 5th ed., sec. 811.)

The prevailing rule is that the determination of the municipality as to which is the deserving bid, in the absence of fraud or abuse of discretion, will not be disturbed by the courts. (McQuillin, Mun. Corporations, sec. 1238; *Clapton v. Taylor,* 49 Mo. App. 117; *People v. Kent,* 160 Ill. 655, 43 N. E. 760.)

MORGAN, J.—This action was commenced by appellant upon behalf of himself and others who are owners of property situated in local sewer improvement districts numbered 1 and 2 of the village of Mountain Home, or in one of such districts, which is liable for taxation for the purpose of constructing and maintaining a system of sewers and sewage disposal works therefor. The purpose of the action is to enjoin the respondents, the village of Mountain Home, the members of its board of trustees, its sewer commission, its clerk and treasurer, and the engineer and contractors who had in charge the

construction of the sewer system and disposal works, from constructing the same and from paying, and receiving payment therefor, and to restrain the members of the board of village trustees and their successors in office from permitting any cellars, basements or other excavations to be drained into the system if constructed.

The respondent appeared and demurred to the complaint upon the grounds: 1. That it is ambiguous, unintelligible and uncertain; 2. That several causes of action have been improperly united; and, 3. That the complaint does not state facts sufficient to constitute a cause of action. The trial judge sustained the demurrer upon the ground last above stated, whereupon appellant refused to further plead and judgment dismissing the action was entered. This appeal is from the judgment.

The complaint is voluminous and attached to and made a part of it are a number of exhibits including the ordinances declaring the intention of the village trustee to create the improvement districts, the ordinances creating said districts, notice that bids for the construction of the sewer system and disposal works will be received, notice to the contractors of the intention of appellant and others to bring legal proceedings to annul and set aside the contract and to prevent the levying and collection of assessments for the purpose of paying for the sewer system and disposal works, notices of assessments, and plans and specifications to which certain maps were attached.

Appellant contends that the ordinances declaring the intention of the village trustees to create the improvement districts did not properly describe the sewer system to be constructed, nor refer to any existing proper plans or specifications from which it could be definitely determined what kind of a system was to be constructed by the two districts; also, that said ordinances were insufficient, in that they did not state what portion of the entire system would be constructed by each district.

The law under which the board of trustees was proceeding is chap. 14, title 13, of the Political Code, being secs. 2342

to 2360, inclusive, Rev. Codes, sec. 2353 of which was amended by the eleventh session of the legislature (Sess. Laws 1911, p. 256), and which chapter was further amended by the twelfth session of the legislature (Sess. Laws 1913, p. 538), by the addition of section 2353a thereto. Subd. 3 of sec. 2353, as amended, requires a city council, or board of village trustees, before or during the construction of a sewer system or sewage disposal works, the cost of which is to be assessed and levied upon the property to be benefited thereby, to first pass an ordinance declaring its intention to construct such system, or works, stating, among other things, the specific boundaries of the proposed district, so that it may be plainly determined therefrom what property or properties are to be included therein; also the general character of the proposed system, or works, and the estimated cost thereof.

The purpose of this requirement is to give notice to the owners of property affected in order that they may protest, if they desire to do so, against the proposed improvement. It is provided that if protests by the owners of more than two-thirds of the front feet of lots of land included within the district shall be filed within the time fixed by statute, the work shall not be further proceeded with unless three-fourths of the members of the council or board of trustees shall vote to proceed with it.

The ordinances declaring the intention of the village trustees to create these districts are numbered 151 and 152, respectively. That numbered 151 declares the intention of the board of trustees to establish a main trunk sewer district in said village to be known as "Sewer Improvement District No. One," and it is stated in section 2 thereof that the boundaries of said district shall be identical with the boundary lines of the incorporated village of Mountain Home and that it shall contain all the real property within the corporate limits of said village. Secs. 3 and 4 of that ordinance are as follows:

"3. That it is the intention of the board of trustees of the village of Mountain Home, to construct for such district a main gravity trunk line sewer and disposal works, sufficient

for all purposes necessary for the comfort, convenience, health and well-being of said village, and of sufficient capacity to efficiently sewer and drain the sewage of the property in said district, through conduits or pipes of tile, cement or vitrified clay, cemented together and laid in trenches beneath the frost line, to and into a disposal works, said disposal works to be situated outside the limits of the said village of Mountain Home; the estimated cost of which will more fully appear in the estimate, now on file in the office of the village clerk of Mountain Home, together with the plan and outline of the proposed district, where persons interested are hereby referred for more detailed information.

"4. That the cost of said sewerage improvements which are established by such plan and estimate is $9,788.00 and is to be assessed against all the property included within said sewerage district, and shall be a lien on the property in said district."

The ordinance numbered 152 declares the intention of the board of trustees to establish a lateral sanitary sewer district in said village to be known as "Local Sanitary Sewerage Improvement District No. Two"; then follows a description of the boundaries of proposed district No. 2 by reference to streets, alleys, section lines and certain lot lines definitely defining the limits of the proposed district, after which appears a description of the property by lots and blocks included therein. Secs. 3 and 4 of the ordinance numbered 152 are as follows:

"3. That it is the intention of the board of trustees of the village of Mountain Home to construct in said district a gravity sewerage system that will efficiently sewer and drain the sewage of the property in said district, through conduits or pipes of tile, cement, or vitrified clay, cemented together and laid in trenches beneath the frost line, to and into a main trunk line sewer; the estimated cost of which will more fully appear in the estimate, now on file in the office of the village clerk of Mountain Home, together with the plan and outline

of the proposed district, where persons interested are hereby referred for more detailed information.

"4. That the cost of said sewerage improvements which are established by such plan and estimate is $10,430.00 and is to be assessed against all the property included within said sewerage district provided however, that all costs and expenses of the sewerage improvements made in the space formed by the junction or intersection of streets and avenues, and in the spaces opposite alleys, in the district ordered to be improved, shall be borne by the property abutting upon, contiguous or contributory to said intersection, and shall be a lien on said property in said district."

It was manifestly the intention of the board of trustees by the creation of district numbered one, to require all of the owners of real estate in the village to contribute toward the construction of the sewage disposal works and of the main or trunk lines of the system which were to be so constructed that lateral districts might, from time to time, be created and connected therewith and, by the creation of district numbered 2, which was to be a lateral district, to additionally assess the property embraced therein for the purpose of constructing laterals to connect with the main trunk lines. We find the ordinance in question, together with the estimate, plan and outline therein referred to, to be sufficient to meet the requirements of sec. 2353, *supra.*

It is alleged in the complaint: "That the citizens and tax payers of Mountain Home, being deceived by said ordinances into believing that it was the purpose of said village trustees to construct a sanitary sewer only, and the same to be placed no deeper than necessary to get below the frost line, and being in favor of such a sewerage system, filed no protests against the construction of such a system; and but one or two protests were filed, and such protests were only as to the location of the sewerage and the lands included thereunder, in the time provided in said ordinances for the presentation of protests, to wit, August 28, 1915."

Appellant further complains that instead of constructing such a system a contract was let for and the construction of a combination sanitary and drainage sewer was commenced, and that it is the purpose of the board of trustees to permit property owners to drain cellars and basements into the system; that the construction of the system at the great depth necessary to receive the drainage of cellars and basements increases the cost to the property owners, and that the additional water received by the pipes and conduits will overload the system and force sewer gas into the houses and be dangerous to the health of the inhabitants of the village.

The estimate, plan and outline mentioned in the ordinances of intention as being on file in the office of the village clerk for the inspection and more detailed information of persons interested would, we think, have left no doubt in the minds of appellant and the other property owners in whose behalf this action was commenced as to the intention of the village trustees and the sewerage committee to provide a system into which cellars and basements might be drained, had they examined them, and they are bound by the notice so given. (*Williams v. City of Caldwell,* 19 Ida. 514, 114 Pac. 519; *Dement v. City of Caldwell,* 22 Ida. 62, 125 Pac. 200.) The estimate refers to the expense of excavating and back-filling trenches as follows: 1,900 lineal feet, 4 to 6 feet deep; 10,100 lineal feet, 6 to 8 feet deep; 2,820 lineal feet, 8 to 10 feet deep. The report of the engineer, which constituted the estimate, also contained the following:

"An average depth of seven feet has been adhered to in laterals as the minimum that will give sufficient fall for house connections and effectively drain basements. The main outfall is run out to a minimum of 4 feet, which is considered the least that will be safe from frost. While sewage itself will not freeze, the cement joints in the pipe are readily broken by the freezing and heaving of the surrounding earth."

While it is alleged, in effect, that the officers having the improvement in charge were guilty of a fraud upon the property owners in causing the sewer system to be laid at a depth

sufficient to receive the drainage of cellars and basements, the exhibits attached to and made a part of the complaint and the records and documents therein referred to show conclusively to the contrary, and while it is a well-settled rule that pleading an instrument by attaching a copy to a complaint or an answer as an exhibit thereto does not tender an issue or involve an assertion of the truth of the statements and recitals contained in the exhibit, it does constitute an allegation of the existence of the instrument at the time and place and for the purpose alleged.

It appears from the complaint that the ordinances had been published containing the information required by law to be given, and directed the attention of property owners to the estimate, plan and outline on file in the clerk's office for their more detailed information, and no other means of giving notice of the intention of officers having improvements of this kind in charge is provided by law. We conclude that in this case as between the general averment and the exhibits, the latter control, and that the complaint, in this particular, taken as a whole, does not constitute an allegation of fraud.

Speaking of the general rule that a demurrer admits the truth of all material and relevant facts which are well pleaded, it is said in 31 Cyc. 337: "The general rule does not apply . . . . to facts which appear unfounded by a record incorporated in the pleading, or by a document referred to, nor to general averments contradicted by more specific averments."

Whether or not the drainage from cellars and basements will overload the sewer system and cause it to be dangerous to the health of the inhabitants of the village depends largely upon the amount of water which will accumulate in such excavations. Should the use to which the sewer system is put bring about the results anticipated by appellant, the fault may be readily corrected in an appropriate action.

It is alleged in the complaint that the plans and specifications provide for the main trunk sewer to be extended from the center of the north line of the northwest quarter of section 36 due south a little more than three-quarters of a mile, and for the disposal works to be near the northwest corner

of the southeast quarter of the southwest quarter of sec. 36, township 3 S., R. 6 E., B. M., while the system, as contracted for and as it is being constructed, has its main trunk sewer extending from the center of the north line of said sec. 36 due south about a half mile, thence southeasterly, and that the main trunk sewer is a quarter of a mile, and the disposal works more than a quarter of a mile, farther east, and on the opposite side of the Oregon Short Line Railroad and farther from the lands of appellant than as shown in the plans and specifications.

This change appears to have been made pursuant to the recommendation contained in the estimate made by the engineer, which was filed with the village clerk, and, together with certain plats, or maps, constituted the plans and specifications, wherein it was recited: ''While this location of outfall seems the cheapest for the present development, it is possible that if the village as a whole was considered, the ultimate cost might be less if the outfall was moved one-fourth mile east, and this point should be further studied.'' It does not appear that this change increased the cost of the system, and, since it affected only the location of the outfall and the disposal works, and not of any portion of the system to which it was intended that property owners might attach their laterals, no one was injured thereby, and it does not constitute such a departure from the plan and construction referred to and described in the ordinance of intention as will render the proceeding void. (*Clyde v. City of Moscow,* 23 Ida. 592, 131 Pac. 381.)

Appellant complains that certain of his lands were included in district numbered 2, while certain lands of others, similarly situated, were omitted therefrom, and that he has thereby been discriminated against and his burden of taxation has been unjustly increased. It is not alleged in the complaint that he protested against the creation of the district, as the statute provides he might have done, nor against the inclusion of his land therein, nor the exclusion of that of others therefrom, and he must be held to have waived any right he had to object to the district as constituted. Certainly it

would be inequitable to permit a property owner to sit by and make no objection to his property being taken into an improvement district and then to enjoin the payment for the improvement upon the ground that it was so included or that the property of others was not.

Another contention is that the contract is void because it was not let to the lowest responsible bidder. Counsel for appellant concedes that the effect of letting the contract to one not the lowest responsible bidder depends upon whether or not the committee is required to submit the work to competitive bids. What seems to be the true rule is stated in Dillon on Municipal Corporations, 5th ed., sec. 811, as follows: "In the *absence of any statutory restriction* upon the power to contract, the selection of a contracting party rests within the discretion of the municipality, and if the charter does not expressly require that contracts shall be let to the lowest bidder, the action of the municipality acting through its officers in accepting a bid, whether it be the lowest or not, rests within the discretion of the designated officials, and their determination will not be interfered with so long as they act in good faith. If, however, the *statute* requires that the contract *shall be awarded to the lowest bidder,* no contract can be let to any person other than to the lowest bidder."

In support of this contention counsel for appellant cites subd. 15 of sec. 2238f, Rev. Codes, enacted by the thirteenth legislative session (Sess. Laws 1915, p. 231), which provides: "All contracts which are made by the city or village for any improvements authorized by this section or any subdivision thereof, shall be made by the council in the name of the city or village upon such terms of payment as shall be fixed by the council, and shall be made with the lowest and best responsible bidder upon sealed proposals, after public notice of not less than three (3) weeks issue of the official weekly newspaper of said city or village. . . . . " This section is a part of chap. 5, title 13, of the Political Code, which relates to general powers of cities and villages, and provides, generally, for improvements to be made by them.

This sewer construction was undertaken, as heretofore stated, under the provisions of chap. 14, title 13 of the Political Code, which provides a complete scheme for the building of sewers and sewage disposal works at the expense of improvement districts, to be formed for that purpose, and under the direction and control of a committee of citizens, who must be substantial taxpayers and *bona fide* residents of the city or village, and sec. 2238f has no application to it.

The law which governs the letting of contracts for the construction of improvements provided for in chap. 14, title 13, is to be found in sec. 2354, Rev. Codes, and is as follows: "All sewerage improvement, or the construction of sewerage disposal works, as contemplated in this chapter, shall be made and done under the supervision of the sewer committee who are authorized to receive bids for the construction and making of the same, and to enter into such contract or contracts as may be necessary to have such work or improvement completed as soon, and in such manner, as may be consistent with the proper procedure."

We conclude that the committee was not required by the law which governed its actions to let the contract to the lowest bidder, and the fact that it did not do so, but awarded it to another, does not affect the obligation to pay for the improvement, and that the contract is valid and binding.

A number of other objections are urged against the contract, which we will not comment upon further than to say that we find no merit in them.

The judgment of the trial court is affirmed. Costs are awarded to respondents.

Budge, J., concurs.

Sullivan, C. J., sat at the hearing but took no part in the decision of this case.