PEOPLE ex rel. WEISS v. CITY OF BUFFALO.

(Supreme Court, Special Term, Erie County. July 22, 1901.)

1. MUNICIPAL CORPORATION—PAVING CONTRACT—BOARD OF PUBLIC WORKS.

The revised charter of the city of Buffalo, § 11, subd. 17, provides that, if power granted to the common council is also granted to any department, such department alone shall exercise the power to the extent to which it is granted to it. Section 283 required the board of public works to let contracts for the performance of any work, the expense of which shall exceed $500, to the lowest responsible bidder. Sections 397 and 398 give the city authority to pave or repave any street, and provide that the board of public works shall advertise for bids for doing the same, but contain no requirement that the work shall be let to the lowest bidder. *Held*, that section 283 applied to paving contracts, and the city council could not, in their discretion, award the contract to any bidder.

2. SAME.

Under section 283, the authorities could not arbitrarily reject the lowest bidder and accept a higher one.

3. STATUTES—CONSTRUCTION.

Though long-continued practice of officers whose duty it is to construe, execute, and apply a statute is strong evidence of its meaning, it is not controlling.

Certiorari by the people, on the relation of Godfrey Weiss, against the city of Buffalo, to review a local assessment for paving. Assessment set aside.

Philip A. Laing, for relator.
William H. Cuddeback, for defendant.

KRUSE, J. The assessment which is the subject of this controversy is attacked by the relator upon the ground.that the contract for the paving which is proposed to be done was not awarded to the lowest bidder. It is not contended on behalf of the defendant that the contract was awarded to the lowest bidder, and it is substantially conceded that, if section 283 of the revised city charter applies to work of this character, the assessment is invalid, for it is expressly provided in that section that:

"Before the board of public works shall enter into a contract for the performance of any work, the expense of which shall exceed the sum of five hundred dollars, it shall cause a notice to be published in the official paper, and two other daily papers in the city, twice a week for two weeks, inviting proposals for the same, according to the plans and specifications to be filed in its office, and the contract shall be let to the lowest responsible bidder, who shall furnish security for its performance satisfactory to the Board."

Under such a provision, local authorities of municipalities may not arbitrarily reject the lowest bidder and accept a higher one. People ex rel. Coughlin v. Gleason, 121 N. Y. 631, 25 N. E. 4.

It is contended upon the part of the defendant that this section does not apply to paving contracts, but that special provision is made for doing work of that character under sections 397 and 398, and that the common council may act independently of the provisions of section 283 in awarding such contracts; that, inasmuch as sections 387 and 398 contain no provision requiring the contract to be awarded to the lowest bidder, the common council may use its own judgment, and, if it is not shown that the common council has acted in bad faith, its action may not be disturbed. Undoubtedly, if this power of making contracts for work of this character had been committed to the common council, the failure to award the contract to the lowest bidder would not of itself invalidate its action, in the absence of any affirmative statutory provision requiring it to award the contract to the lowest bidder (Gilmore v. City of Utica, 131 N. Y. 26, 35, 29 N. E. 841), for other elements, such as business integrity, experience, the necessary capital and facilities for doing the work, might more than overbalance the nominal difference between the higher bid selected and the rejected lower bid. It is well known that these are elements which are given much weight in the awarding of contracts for private enterprises. In recent years, however, the trend of legislation has been to restrict the discretionary power of public officials of municipalities in awarding contracts for public works, and to hedge about and define with more precision their line of duty in that regard. But if this requirement of awarding the contract to the lowest bidder does not apply to work of this character, the relator cannot successfully assail this assessment, for it is not claimed by him that the common council or any of the city officials acted in bad faith, or that the contract was tainted with actual fraud, or even improvidently made; and the action of the common council is fortified by the petition of a majority of the owners of property assessed for this improvement, requesting the acceptance of the bid of the contractor to whom the contract was awarded. The charter vests the legislative power in the common council (section 4), and the executive and administrative powers are centered in the mayor and the various departments (sections 43, 44; also subdivision 11 of section 17). The department of public works, of which the board of public works is the head, consists of three commissioners. Among its duties, it has the charge and control of paving and repaving streets, and making and preserving surveys, maps, plans, and estimates, and drawings relating to the laying out and improvement of streets, etc. (section 271). Section No. 272 provides as follows:

"When any work or improvement, general or local, prescribed in this title, is necessary or advisable, the board may recommend the same to the common council, with or without plans, specifications and descriptions. The common council may thereupon order the work done, or may order that plans, specifications and descriptions shall be furnished with or without estimates of cost or bids from responsible parties who will contract with the city to do the prescribed work. The common council may order any work or improvement either with or without the recommendation of the board of public works,

but when such work or improvement is ordered in accordance with the plans, specifications or descriptions, a contract therefor shall be made by the board, except where it is authorized to do the work itself. All work and improvements ordered shall be under the direction and supervision of the board, and when it shall make report to the common council of its action, the council shall provide for the payment therefor, either from the general fund, or by local assessment, or both, as in this act prescribed. And no such work shall be executed until payment therefor has been provided as required by this act. * * *"

It will thus be seen that this section applies to the work of paving and repaving, for this work is expressly committed to the board of public works in the preceding section, and in the same title; and I think that section 272 and section 283, which relate to the awarding of a contract to the lowest bidder, and have heretofore been referred to, have full application to work of that character, excepting so far as they may have been modified by another title which relates particularly to the work of paving and repaving, and to which attention will be called presently.

Section 397 provides:

"It [the city] may cause any street or alley to be graded or regraded, gravelled or regravelled, macadamized or remacadamized, or paved or repaved. When it is proposed to pave or repave any street or alley, plans and quantities shall be prepared for doing the same with each kind of pavement for the laying of which specifications have been filed by the board of public works. The latter body shall advertise for bids for doing the same in accordance with such plans, specifications and quantities and report the same to the common council. After one, and within four calendar months from such report, the common council shall determine which kind of pavement shall be used, and in case a majority petition shall not have been presented for the kind so determined upon, shall pass a resolution of intention to order the street paved with any kind of pavement it may select. The specifications may provide that the persons submitting bids or proposals shall agree to enter into contract to do the work, and to keep and maintain the same in good repair for a certain definite period, and a contract may be entered into in accordance therewith, and a local assessment made to defray the expense thereof, anything in this act to the contrary notwithstanding."

The next section provides, in effect, that, if the expense of the work or improvement exceeds the sum of $500, it shall not be ordered except upon a vote of three-fourths of all the members elected to the common council, and after notice of the intention to order the improvement shall have been published as therein prescribed, or unless it shall be applied for by a majority of the resident owners of the lands fronting on the street, representing at least two-fifths of all the feet front of the lands on the street along which the improvement is to be made. The application is to be referred to the assessors for the purpose of ascertaining whether such majority have applied for the improvement.

Subdivision 11 of section 17 provides:

"In case any power granted to the common council is also granted in whole or in part to any department or officer, such department or officer shall alone exercise such power to the extent to which it is granted to such department or officer."

The charter seems to contemplate that the board of public works shall file specifications for different kinds of pavement, and, when it is proposed to pave or repave, plans and quantities shall be pre-

pared by the board for doing each kind of pavement.  That the board shall advertise for bids, and report these bids to the common council, and the common council determine the kind of pavement, and order the work culminating in a contract.  The form of the proposals of contractors, and the action of the board of public works thereon, may be such that the action of the common council in selecting the particular kind of pavement and ordering the work may, in effect, be an acceptance of the bid, and so complete the contract; but, whatever form the proceedings may take, I think, to be effective, the board of public works must be a party to the contract.

It appears that in very many instances, extending over a series of years, the practice has been for the common council itself to award the contract, regardless of this provision requiring the contract to be awarded to the lowest bidder.  It is contended by the defendant that, in view of this long practice, it should be considered upon the construction to be placed upon the charter, and that this provision regarding the awarding of the contract to the lowest responsible bidder should be held not to apply to the work of paving.  It is true that long-continued practice of officers whose duty it is to construe, execute, and apply a statute is strong evidence of its meaning.  Easton v. Pickersgill, 55 N. Y. 315; Matter W. St. A. & P. R. R. Co., 115 N. Y. 442, 22 N. E. 356.  It is, however, not controlling.  23 Am. & Eng. Ency. 340, 341.  It does not appear in this case whether these low bidders were responsible, as the chapter requires, or upon what grounds their bids were rejected, and, so far as this practice has been to reject the bid of the lowest responsible bidder, it seems to be at variance with the opinions of the corporation counsel of the city, if I interpret them correctly; and I think whatever effect this practice would otherwise be entitled to is fairly overcome by the opinions of the law officers whose duty it was to construe the charter and advise its officers.

I am of the opinion that this assessment must be set aside for the reason that it was not let to the lowest responsible bidder, and an order may be entered to that effect, with $50 costs and disbursements to the relator.