(October 3, 1916.)

## R. E. SEYSLER, OSCAR NORDQUIST and JULIUS BRASS, Appellants, v. CHAS. R. MOWERY, as Mayor of the City of Wallace, et al., Respondents.

### [160 Pac. 262.]

CITIES AND VILLAGES—PUBLIC IMPROVEMENT—COMPETITIVE BIDS—SPECIFICATIONS.

1. It was the purpose of the legislature, in enacting subds. 15 and 16, sec. 2238f, Rev. Codes (Sess. Laws 1915, p. 231), relative to making contracts for certain improvements by cities and villages, to procure competitive bidding for such contracts and thereby to safeguard public funds and prevent favoritism, fraud and extravagance in their expenditure.

2. It was also the legislative intent that such a contract must not be let to any other than the lowest bidder, unless some fact, or facts, exist by reason of which a bid, other than the lowest, has been made by one who is, even though higher in price, the best responsible bidder.

3. If such facts do exist they must be weighed and considered by the mayor and council or board of trustees, while in session, and, if the contract is let to another than the lowest bidder, the ultimate facts upon which that action is based should be entered in the clerk's minutes.

4. The specifications for a public improvement such as is contemplated by subds. 15 and 16, sec. 2238f, *supra,* must be made sufficiently definite and certain that any bidder who secures the contract may be compelled to perform it in a way to produce the kind, character and grade of improvement desired and that liability upon his bond will result from his failure so to do.

[As to construction of "lowest responsible bidder" or similar phrase in statute providing for letting of municipal contracts, see note in Ann. Cas. 1913A, 500.]

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. William W. Woods, Judge.

The question of sufficiency of specifications for guidance of bidder for public contract is discussed in a comprehensive note in 30 L. R. A. N. S., 214.

Suit to enjoin the mayor and council of the city of Wallace from entering into a contract for the pavement of the streets and alleys of Local Improvement District No. 4 of that city. Order dissolving temporary restraining order. *Reversed.*

Miller & Gundlach and J. F. Ailshie, for Appellants.

A legislative body can only ''do things'' by appropriate action spread upon its minutes, and it cannot legally act by parol. (*Miller v. Board of Auditors*, 41 Mich. 4, 2 N. W. 180; *Gorman v. County Commrs.*, 1 Ida. 553; *Rankin v. Jauman*, 4 Ida. 394, 400, 39 Pac. 1111; *Castle v. Bannock County*, 8 Ida. 133, 67 Pac. 35.)

The individual action of any number or all the members thereof cannot bind the corporation. (*McCortle v. Bates*, 29 Ohio St. 419, 23 Am. Rep. 758; *Zottman v. San Francisco*, 20 Cal. 96.)

The power of the city council to accept or reject bids and to award contracts is *quasi*-judicial in its character, and where arbitrarily exercised or the discretion is abused, the courts will vacate their action. This is particularly true where an injured taxpayer applies to the court of equity for relief from such abuse of discretion and arbitrary action. In the case at bar the discrepancy between the bids for the same kind of work is so great that the record itself raises the legal presumption of arbitrary action or favoritism or fraud. (3 McQuillin, Mun. Corp., sec. 1227; *Inge v. Board of Public Works*, 135 Ala. 187, 93 Am. St. 20, 33 So. 678; *State v. Rickards*, 50 Am. St. 490, note; *In re Delaware & H. Canal Co.*, 8 N. Y. Supp. 352; *Nelson v. City of New York*, 131 N. Y. 4, 29 N. E. 814.)

Discretion must be exercised in a legal and judicial manner. (*Attorney General v. Detroit*, 26 Mich. 262; *Hannan v. Board of Education*, 25 Okl. 372, 107 Pac. 646, 30 L. R. A., N. S., 214; *People ex rel. Coughlin v. Gleason*, 121 N. Y. 631, 25 N. E. 4; *Fourmy v. Town of Franklin*, 126 La. 151, 52 So. 249.)

Lawrence E. Worstell and James A. Wayne, for Respondents.

If the council had not only to determine which of the several bids was lowest in amount, but it had also the right to determine as between several bidders which was the most responsible, then it was clothed with a discretionary power, and its action in accepting the bid which it did accept in this case should not be disturbed, except where its action is shown to have been actuated by fraud or collusion. The proof of fraud sufficient to disturb the action of the city council should be clear and convincing and not rest entirely in allegations of a complaint, unsupported by an averment of specific acts, or by any proof of fraud. (*Williams v. City of Topeka,* 85 Kan. 857, Ann. Cas. 1913a, 497, 118 Pac. 864, 38 L. R. A., N. S. 672; *Reed v. Rockcliff-Gibson Construction Co.,* 25 Okl. 633, 138 Am. St. 937, 107 Pac. 168; *City of North Yakima v. Scudder,* 41 Wash. 15, 82 Pac. 1022; *State v. Mayor,* 66 N. J. L. 533, 49 Atl. 587; *Maryland Pav. Co. v. Mahool, Mayor,* 110 Md. 397, 72 Atl. 834; *United States Wood Preserving Co. v. Sundmaker,* 186 Fed. 683, 110 C. C. A. 224; *Louisville Steam Forge Co. v. Gast* (Ky.), 115 S. W. 761; *Trapp v. City of Newport,* 115 Ky. 840, 74 S. W. 1109.)

Where the authority is conferred upon a public body to let a contract to the lowest and best bidder, a discretion is conferred upon such public body that cannot be interfered with or controlled by the courts through the issuance of a writ of mandate. (*State v. Hermann,* 63 Ohio St. 440, 59 N. E. 104; *Eaves v. Rickards,* 16 Mont. 145, 50 Am. St. 476, 40 Pac. 210, 28 L. R. A. 298; *Brown v. City of Houston* (Tex. Civ.), 48 S. W. 760; *State ex rel. Union Fuel Co. v. City of Lincoln,* 68 Neb. 597, 94 N. W. 720; *Johnson v. Sanitary District of Chicago,* 163 Ill. 285, 45 N. E. 214.)

MORGAN, J.—On June 1, 1916, respondents, as mayor and members of the city council of Wallace, having theretofore advertised for bids for paving the streets and alleys in Local Improvement District No. 4 of that city, met in special ses-

sion for the purpose of considering such bids as had been submitted for making said improvement. For laying the kind of pavement respondents had agreed upon, being of asphaltic concrete with a four-inch base and a two-inch top, and for maintaining it for a period of five years, six bids were submitted, which had been tabulated by the city engineer for the convenience of the mayor and council, as follows:

| Name. | Price. | Maintenance. |
|---|---|---|
| Oregon Eng. & Con. Co | $72,347.70 | $ 250.00 |
| Clifton, Applegate & Toole | 67,954.44 | 131.50 |
| Independent Asphalt Pv. Co | 62,572.95 | 1,250.00 |
| Spokane Bitu-Mass Pav. Co | 56,857.75 | 5.00 |
| C. M. Payne | 54,587.70 | 1,938.25 |
| Washington Paving Co | 54,784.26 | 300.00 |

It further appears that, without assigning any reason for so doing, and over the protest and objection of citizens of the city and taxpayers of the local improvement district, respondents rejected the bids of Clifton, Applegate & Toole, Independent Asphalt Paving Co., Spokane Bitu-Mass Paving Co., C. M. Payne and Washington Paving Co., and accepted that of Oregon Engineering & Construction Co.

Thereafter appellants, who are citizens of Wallace and who own property which is subject to taxation in and for the benefit of Local Improvement District No. 4, instituted a suit in the district court, one of the purposes of which was to procure an injunction restraining respondents from entering into a contract with the Oregon Engineering & Construction Company for making the proposed improvement.

Upon the filing of the complaint the district judge issued an order requiring respondents to appear and show cause, if any they had, why an injunction *pendente lite* should not issue, and commanding them to desist from taking any further action in the premises until the further order of the court.

The matter came on to be heard in the district court upon the amended complaint, the order to show cause and an answer filed by all the respondents except the mayor. There were submitted for the court's consideration a certified copy

of the council proceedings had at the special session of June 1, 1916, and certain affidavits filed by the respective parties, all of which appear in the record in this court. After considering the showing so made the district judge, on June 24, 1916, made and entered an order vacating, setting aside and dissolving the order to show cause and the temporary injunction or restraining order.

This appeal is from the order dissolving the injunction. Pending the hearing upon appeal appellants made application for and were granted an order in the nature of an injunction *pendente lite,* and application was made by respondents to dissolve that order. However, by agreement of counsel and with the consent of this court, the case was heard upon the appeal and upon the record made in the district court.

In advertising for bids and in awarding the contract respondents were attempting to proceed pursuant to the provisions of subds. 15 and 16 of sec. 2238f, Rev. Codes of Idaho, (Sess. Laws 1915, p. 231), which are as follows:

"15. All contracts which are made by the city or village for any improvements authorized by this section or any subdivisions thereof, shall be made by the council in the name of the city or village upon such terms of payment as shall be fixed by the council, and shall be made with the lowest and best responsible bidder upon sealed proposals, after public notice of not less than three (3) weeks issue of the official weekly newspaper of said city or village, which notice shall contain a general description of the kind and amount of work to be done, the material to be furnished, as nearly accurate as practicable, and shall state that the plans and specifications for said improvement work are on file in the office of the city engineer or city clerk.

"16. Each contractor shall be required to give a good and sufficient bond to the city or village, to be approved by the city council or village board of trustees for the faithful performance of the contract."

It was manifestly the purpose of the legislature, in enacting the foregoing provisions, to procure competitive bidding for contracts for making public improvements of the kind

here under consideration and thereby to safeguard public funds and prevent favoritism, fraud and extravagance in their expenditure, and it is equally clear that it was the legislative intent that a contract of the kind here proposed to be entered into must not be let to any other than the lowest bidder unless some fact, or facts, exist by reason of which a bid, other than the lowest, has been made by one who is, even though higher in price, the best responsible bidder.

If any such facts do exist, they must be weighed and considered by the mayor and council, or board of trustees, while in session, and if the contract is let to another than the lowest bidder, the ultimate facts upon which that action is based should be entered in the clerk's minutes for the information of taxpayers, the protection of the officers who let the contract from unjust criticism for the commission of an act which, in the absence of explanation, would appear to be an unjustified expenditure of public money, and to the end that the courts may, if called upon to do so, review the facts and reasons upon which the contract was awarded and pass upon their sufficiency.

Discussing the discretion of governing boards of municipalities in matters of this kind, McQuillin, in his work on Municipal Corporations, vol. 3, sec. 1227, says: "This discretion is not an arbitrary uncontrolled one, but one limited to the exercise of *bona fide* judgment, based upon facts tending reasonably to the support of their determination. Accordingly it has been held that an award to one who is not the lowest bidder will be set aside where no plausible reason for making it is given."

This court, in case of *Caldwell v. Village of Mountain Home,* 29 Ida. 13, 156 Pac. 909, quoted with approval from Dillon on Municipal Corporations, 5th ed., sec. 811. Another part of that same section is: "Even when the provision of the statute is that the contract shall be let to the 'lowest responsible bidder' or 'lowest and best bidder,' the body or officer awarding the contract cannot exercise *the discretion entrusted arbitrarily,* and without reason reject the lowest bid and accept a higher one."

The supreme court of the state of New Jersey, in case of *Faist v. Mayor etc. of the City of Hoboken*, 72 N. J. L. 361, 60 Atl. 1120, construing a statute which provided that a certain class of contracts should be entered into only with the responsible bidder or bidders who shall give satisfactory bonds or security for the faithful performance of the work, said: "If a responsible bidder tenders himself ready to fulfil his bid by entering into the contract, and offers the bondsman or security required, he is entitled to be awarded the contract as against any person whose bid was higher than his. If there be an allegation that a bidder is not responsible, he has a right to be heard upon that question, and there must be a distinct finding against him, upon proper facts, to justify it. *McGovern v. Board of Works*, 57 N. J. L. 580, 31 Atl. 613." (See, also, *Inge v. Board of Public Works*, 135 Ala. 187, 93 Am. St. 20, 33 So. 678; *Armitage v. Mayor etc. of City of Newark*, 86 N. J. L. 5, 90 Atl. 1035; *Attorney General v. City of Detroit*, 26 Mich. 262; *People ex rel. Coughlin v. Gleason*, 121 N. Y. 631, 25 N. E. 4; *Fourmy v. Town of Franklin*, 126 La. 151, 52 So. 249; *People v. City of Buffalo*, 84 N. Y. Supp. 434; *Berry v. Tacoma*, 12 Wash. 3, 40 Pac. 414; *Times Pub. Co. v. Everett*, 9 Wash. 518, 43 Am. St. 865, 37 Pac. 695.)

In the case last above cited the supreme court of Washington, construing a statute which required contracts made by cities of the third class for printing and advertising to be let to the lowest bidder, said: "The responsibility of the bidder, his experience, and his facilities for carrying out a contract, may be looked into, and an honest determination that on the whole his bid will not be, in the long run, the lowest, will be entitled to control. . . . .

"But in every such case, in order to protect itself from interference, the contracting agent should judicially find the facts which in its judgment render the apparently lowest bid not the lowest in fact."

In this case all the prospective contractors were bidding upon the same improvement to be made of the same materials under the same plans and specifications, and the successful bidder was required, by law, to give a good and sufficient bond

for the faithful performance of the contract. The bid which was accepted was not the lowest offer, but the highest. It was many thousand dollars higher than some of the others, and the council rejected all others and accepted it without, at the time, making any explanation or assigning any reason for so doing. After this case was commenced, and as a defense to the action, a number of affidavits were filed, among them being those of six of the respondents, whereby it is shown that certain of the members of the city council had, at various times prior to attempting to award this contract, examined asphaltic concrete pavements and samples of such pavements which had been laid by the various bidders, other than the one to which the contract was awarded, and had found the same to be of inferior quality and not such as they desired to have laid in the city of Wallace.

It may be gravely doubted that affidavits showing the result of investigations prosecuted by individual members of a city council acting separately and when not in session should be accepted in lieu of findings of fact which should have been made by that body while in session when determining as to which was the lowest and best responsible bidder. However, we do not deem it necessary to decide that question in this case. We have examined the affidavits presented on behalf of respondents, and find them to be insufficient to justify their action in awarding the contract to the highest, instead of the lowest, bidder.

While it appears from these affidavits that certain members of the council, after examining pavements and samples from pavements laid by the bidders, other than the Oregon Engineering & Construction Company, did not approve the same, it is not disclosed, nor contended, that the contractors offering these bids were not financially responsible and abundantly able to fulfil the contract to pave the streets and alleys in Improvement District No. 4 according to the plans and specifications, and it is further disclosed in the record that the highest bidder, to whom the contract was awarded, had never, during its existence, constructed a single square yard of asphaltic concrete pavement.

We gather from the affidavits that respondents base their action in accepting the highest bid upon information gathered by some of them that the Oregon Engineering & Construction Company had employed, or would employ, one Compton to superintend the work, and that Compton had superintended like work, for another construction company, which had proven to be very satisfactory. There is nothing before us to show that the successful bidder was in any way bound to employ Compton or to retain him in its employ, or that he would, if he superintended the work, render the same class of service he had theretofore rendered for another and different employer, or do anything else not required by the contract, plans and specifications, which is exactly what any other contractor would have been bound to do.

It was urged upon oral argument by counsel for respondents, as an explanation of the rejection of the lower bids and the acceptance of the highest one, that the specifications were loosely drawn, and, although conforming to the requirements thereof, a contractor might, by mixing the component parts in improper proportions, produce an inferior grade of pavement, while under the same specifications superior work would result by mixing the specified parts in proper proportions. If this be true, and if a prospective contractor was bidding upon a certain grade of pavement while others were bidding upon another, we do not hesitate to say that the contract was not let upon competitive bids as is contemplated by our statute, because all bidders were not given an opportunity to bid upon the kind of improvement to be made. Furthermore, when thousands of dollars of public funds, in excess of the amount of the lowest bid, are to be expended in procuring a public improvement we must look, for a justification, to something more substantial than the empty hope cherished by the members of a city council that a contractor will do better work than he is required to do in order to collect the contract price.

In order to conform to the spirit and purpose of subds. 15 and 16, sec. 2238f, heretofore quoted, the specifications must be made sufficiently definite and certain that all may know

what each is bidding upon and that any bidder who secures the contract may be compelled to perform it in a way to produce the kind, character and grade of improvement desired and that liability upon his bond will result from his failure so to do. (*Hannan v. Board of Education*, 25 Okl. 372, 107 Pac. 646, 30 L. R. A., N. S., 214, and cases therein cited.)

The order of the trial judge vacating and dissolving the temporary injunction is reversed and the cause is remanded, with instructions that the same be continued in full force and effect until the case is finally disposed of. Costs are awarded to appellants.

Sullivan, C. J., and Budge, J., concur.