500 P.2d 218

**William D. STRALEY, Plaintiff-Appellant,**

**v.**

**IDAHO NUCLEAR CORPORATION, Defendant-Respondent.**

**No. 11000.**

Supreme Court of Idaho.

Aug. 3, 1972.

---

918

Denman & Reeves, Idaho Falls, for plaintiff-appellant.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for defendant-appellee.

BAKES, Justice.

This appeal resulted from an order granting summary judgment in favor of the Idaho Nuclear Corporation, hereinafter referred to as respondent, against William D. Straley, hereinafter referred to as appellant. Appellant had instituted this action to recover damages for personal injuries sustained while riding in one of respondent's buses. The primary issue for disposition on appeal is whether the district court properly granted summary judgment in favor of respondent. For reasons articulated below, we conclude that the district court erred, and that the case must be reversed and remanded for trial.

Prior to examining the facts, it is helpful to reiterate the pertinent general principles on summary judgments and this court's guidelines in determining the propriety of an order granting summary judgment issued by the district court. Summary judgment is properly granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. Rule 56(c). E.g. Bryan and Co. v. Kieckbusch, 94 Idaho 116, 482 P.2d 91 (1971). In determining whether any issue of material fact is in dispute, it is well settled that the facts should be liberally construed in favor of the party against whom summary judgment is sought. E.g. Jack v. Fillmore, 85 Idaho 36, 375 P.2d 321 (1962); Crane v. Banner, 93 Idaho 69, 455 P.2d 313 (1969). In light of this rule, this court has held that summary judgment is improper when a conflict in affidavits respecting issues of fact exists, or when the relevant pleadings, depositions, and affidavits raise any question of credibility of witnesses. See respectively Hansen v. Howard O. Miller, Inc., 93 Idaho 314, 460 P.2d 739 (1969); Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960). On the other hand, a mere scintilla of evidence will not create a genuine issue of material fact sufficient to preclude summary judgment. E.g. Jephson v. Ambuel, 93 Idaho 790, 473 P.2d 932 (1970); Petricevich v. Salmon River Canal Co., 92 Idaho 865, 452 P.2d 362 (1969) (rejecting the "slightest doubt" test.). On appeal from an order granting summary judgment, this court must construe the evidence presented to the district court liberally in favor of the party opposing the order and accord him "the benefit of all inferences

which might be reasonably drawn." Rawlings v. Layne & Bowler Pump Co., 93 Idaho 496, 465 P.2d 107 (1970).

The facts, pertinent to this appeal, can be summarized as follows: Respondent operates a bus line, pursuant to contract with the United States Atomic Energy Commission, to transport "authorized personnel" to and from the National Reactor Testing Station (NRTS) and various locations in the Idaho Falls-Pocatello area. Respondent operates along fixed routes some 85 buses, all owned by the federal government. According to respondent, only certain employees of the federal government, Atomic Energy Commission contractors and subcontractor employees, Navy personnel and occasional business invitees are authorized to utilize the bus services. However, appellant notes in his affidavits and deposition that he has seen many persons who are not employed at the site ride on respondent's buses on various occasions.

On his way to work on March 11, 1969, appellant boarded one of respondent's buses near his home in Idaho Falls. During the trip to the NRTS facility, appellant occupied the rear seat of the bus (allegedly the only one vacant when appellant boarded). Sometime during the trip, appellant claims the bus hit "something" and he "sailed off his seat and hit the ceiling" of the bus, resulting in injuries which caused him to suffer serious back, neck and arm pains. Appellant reported the incident and his consequent injuries to the attendant at the NRTS dispensary shortly after arriving at the site.

Appellant was unable to estimate the speed the bus was travelling when he was thrown from his seat, but he did recall that the road was extremely bumpy and replete with pot-holes. Appellant also remembered that after the jolt he had to re-secure the straps which held the bus seat in place.

As a consequence of these injuries, appellant commenced this action in the district court, complaining that respondent "operated its bus on which the [appellant] was riding in such a manner that it abruptly and without any warning whatever to the [appellant] threw [appellant] to the ceiling, thereby causing [appellant's] head to strike the ceiling of the bus. . . ."

Finding no express allegation in appellant's complaint that it was negligence, and claiming that there was no evidence of any such negligence, respondent moved for summary judgment to dismiss appellant's action. After examining affidavits and depositions submitted by both sides as well as reviewing the pleadings, the district court granted respondent's motion. In support of its order the court noted:

"[T]he defendant is a contract carrier, but even if the defendant was a common carrier there was no showing of any negligence on the part of the defendant and there was (sic) not sufficient facts presented to sustain a verdict for the plaintiff against the defendant in said action, and there was (sic) not sufficient facts or conclusions presented to the Court even to invoke the doctrine of res ipsa loquitur, and on this showing defendant has established that plaintiff has no cause of action and that such showing has not been successfully controverted by the plaintiff. . . ." (Clk.Tr. p. 147).

From the court's order, appellant filed this appeal.

■ From our examination of the record, we disagree with two of the conclusions of the district court, and therefore find that the order of the district court granting summary judgment was error. First, from undisputed facts in the record we conclude that respondent, while it may not be classifiable as a common carrier under public utility law, nonetheless maintains enough of the characteristics normally found in a common carrier to be held to the higher standard of care ascribed to such a carrier. Secondly, the allegation of respondent's possible negligence in appellant's somewhat indefinite pleadings and the affidavits and depositions justify the invoking of the doctrine of res ipsa loquitur.

As mentioned above, respondent does not fit within the traditional definition of "common carrier." Generally defined, a "common carrier" is one "who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities from place to place, offering his services to such as may choose to employ him and pay his charges." Sanger v. Lukens, 24 F.2d 226, 228 (D.C.Idaho 1927), rev'd on other grounds, 26 F.2d 855 (9th Cir.1928). *See* 13 Am.Jur.2d, Carriers § 2, pp. 560–62 (1964) (defining, common carrier as "one who holds himself out to the public as engaged in the business of transporting persons or property from place to place for compensation, offering his services to the public generally.").

Different considerations shape the definition of private or contract carrier:[1]

"A private carrier is one who, without making it a vocation, or holding himself out to the public as ready to act for all who desire his services, undertakes, by special agreement in a particular instance only, to transport property or persons from one place to another either gratuitously or for hire." 13 Am.Jur.2d, Carriers, § 8, p. 565.

Availability to the public without discrimination appears to be the main feature distinguishing a private and common carrier. Annot. 112 A.L.R. 89, 90 (1938). *See* Cushing v. White, 101 Wash. 172, 172 P. 229 (1918); Horluck Transportation Co. v. Eckright, 56 Wash.2d 218, 352 P.2d 205 (1960); Hunt v. Clifford, 152 Conn. 540, 209 A.2d 182 (1965). Respondent does not squarely fall within the general definition of "common carrier" because only "authorized personnel"—i.e., certain employees of the federal government, employees of government contractors, and government guests and invitees are generally permitted to use the buses to travel to the site. However, respondent's relation-

ship to each of its individual passengers such as appellant does retain enough of the characteristics of a common carrier to raise an issue concerning whether or not respondent should be held to the higher standard of care generally ascribed to common carriers. Respondent held itself out generally to all members of the public who were travelling to the AEC site as a carrier of persons to and from that site for hire. While the scope of those persons eligible to travel to the AEC site is more restricted than the public in general to whom a common carrier must ordinarily provide service, the scope of persons served by respondent is much broader than the usual case of private carriage. Operationally respondent is much like any municipal bus line and it resembles a municipal bus line in its relationship to its passengers, specifically in the case of appellant. It provided appellant transportation to and from his work for a regulated fare as an alternative means to driving his own automobile, participating in a car pool, or any other means which appellant might find satisfactory to him. Appellant boards and deboards the bus much as he would a public conveyance, i.e., at fixed bus stops. Appellant can purchase his tickets at various spots much like he might purchase a ticket book for municipal conveyances. Respondent on the average runs 85 buses over some 58 routes per day. These buses have fixed termini, routes and stops. Any restriction on passengers is imposed by the AEC, and not by respondent, except in carrying out the policy of the AEC. Even with those restrictions, however, respondent apparently does carry a sizeable number of persons with varied business connections with the Arco AEC site, since appellant's affidavit states that he had seen persons ride the buses who did not work there.

It has been held that a carrier need not serve all members of the public to retain his status as a common carrier. A car-

---

1. The distinction between a private and contract carrier appears to be primarily a distinction drawn for purposes of regulation and licensing by public utility authorities, and is not a distinction resulting from differing standards of care to be exercised toward the passengers or cargo carried.

rier's customers are necessarily limited by "place, requirements, ability to pay, and other facts." Terminal Taxi Cab Co., Inc. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L. Ed. 984 (1916). *See* M & R Investment Co. v. C.A.B., 308 F.2d 49 (9th Cir.1962). Considering all of these facts, we think that the relationship between appellant and respondent was more akin to common carriage than private carriage and thus the higher standard of care required of a common carrier should be applied to the relationship between appellant and respondent on the day of the accident in question.

 Regarding the second issue of respondent's negligence, it is helpful at the outset to answer respondent's contention that appellant's pleadings did not properly allege a cause of action. Respondent argues that appellant stated no action in tort, but rather pleaded a contract action. According to respondent, appellant in this situation has no action based on contract. We do not think it either necessary or controlling to absolutely characterize appellant's cause of action as *ex delicto* or *ex contractu*—i.e., as in tort or in contract. The important feature is that appellant's concededly indefinite pleadings have imparted sufficient notice of his claim against respondent—namely that his injuries were occasioned by respondent's improper (negligent) operation of its bus. Under the liberal standards inherent in the notice pleading provisions of the Idaho Rules of Civil Procedure, appellant's pleading adequately states a cause of action. (I.R.C.P. Rule 1; see Argonaut Ins. Co. v. White, 86 Idaho 374, 386 P.2d 964 (1963).

Although there is authority for the proposition that a claim based on the negligence of a carrier can be founded in either contract or tort, (W. Prosser, Prosser on Torts, 637, 639–643 (3d ed. 1964); Annot. 20 A.L.R.2d 331, 332–334 (1951); Annot. 68 A.L.R.2d 667, 671–72 (1959).) the Idaho rule appears to be that such claims against carriers are better grounded in tort. Ness v. West Coast Airlines, Inc., 90 Idaho 111, 410 P.2d 965 (1965). The *Ness* case involved a claim against the defendant airlines for negligently injuring the plaintiff passenger. In bringing his action, the passenger sought recovery on both contract and tort causes of action. The district court struck the contract action from the pleadings prior to trial. In the course of its opinion on appeal, this court affirmed the district court's striking of the contract action, stating: "The defendant was not an insurer of the safety of its passengers. Its liability must be based on negligence." In other words, the court implied that the gravamen of the personal injury action against the carrier sounded in tort rather than in contract. See Prosser, *supra*, at 642–43. Williamson v. Pacific Greyhound Lines, 67 Cal.App.2d 250, 153 P.2d 990 (1944).

The liability of respondent in the case at bar, as was the carrier's liability in *Ness*, must be based on negligence. We do not, however, deem a contract or tort appellation attached to appellant's pleadings to be significant. Appellant's pleading adequately states a cause of action in negligence against respondent.

 Concluding this, we think the doctrine of res ipsa loquitur is applicable. The doctrine creates a substantive inference of negligence. Skaggs Drug Centers, Inc. v. City of Idaho Falls, 90 Idaho 1, 407 P.2d 695 (1965). In order to utilize the doctrine, certain salient elements must exist.

"The essentials of the doctrine are: (1) that the agency or instrumentality causing the injury was under the control and management of the defendant (Citation omitted.); (2) that the circumstances were such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence. (Citation omitted.)" C. C. Anderson Stores Co. v. Boise Water Corporation, 84 Idaho 355, 359, 372 P.2d 752, 754 (1962). *Accord*: Whitt v. Jarnagin, 91 Idaho 181, 418 P.2d 278 (1966). In cases like the case at bar involving the liability of carriers

based on alleged jerks and lurches of the carrier's conveyance, the doctrine of res ipsa loquitur is particularly applicable. 14 Am.Jur.2d, Carriers, § 1164, pp. 576–77. *See* Shaw v. Pacific Greyhound Lines, 50 Cal.2d 153, 323 P.2d 391 (1958), superceding 314 P.2d 167 (Cal.App.1957). There is no dispute that respondent had exclusive control of the instrumentality—i.e. the bus —which caused appellant's injury. The only question then is whether the incident was one which would not normally occur in the absence of negligence. Dempsey v. Market St. Ry. Co., 79 Cal.App.2d 216, 179 P.2d 34 (1947). We acknowledge the propriety of the general rule that the mere occurrence of the accident without evidence of a severe jerk, jolt, or lurch precipitated by negligence is not sufficient to invoke the doctrine of res ipsa loquitur. *E.g.* Gentry v. Greyhound Corp. 46 Wash.2d 631, 283 P.2d 979 (1955); Phen v. All American Bus Lines, 56 Ariz. 567, 110 P. 2d 227 (1941); Benton v. Farwest Cab Co., 63 Wash.2d 859, 389 P.2d 418 (1964). *See* Ness v. West Coast Airlines, 90 Idaho 111, 116, 410 P.2d 965 (1965) (a negligence case against an air carrier wherein the court stated, "We do not think the doctrine of res ipsa loquitur is applicable in this case, because there was evidence that the dropping of the plane was caused by an air current or air turbulence, and there was no showing, either by specific evidence or common knowledge, that such motion of a plane does not occur in the absence of negligence in the operation of the aircraft."). However, when it appears that the injury was resultant from a severe jerk not incident to the normal operation of the conveyance, the application of res ipsa·loquitur is proper. *See, e.g.*, Shaw v. Pacific Greyhound Lines, 50 Cal.2d 153, 323 P.2d 391 (1958).

The pertinent rule is stated:

"No fixed rule can be propounded as to what jerking, jolting, or lurching of a conveyance will give rise to an inference of negligence in its operation or lay a sufficient basis upon which to predicate a finding of negligence in the carrier. The mere fact that there is jerking, jolting, or lurching of a conveyance incident to its normal operation does not constitute negligence on the part of the carrier, and even though injury results therefrom the carrier cannot be held liable. A certain amount of jerking, jolting, and lurching is generally accepted as the usual incident of travel, and passengers are chargeable with knowledge thereof and assume the risk of injury therefrom. At precisely what point jerking, jolting, or lurching movements of a conveyance lose their character as incidents reasonably to be expected during the course of travel and assume the status of actionable negligence is a question of fact, to be determined in the light of the surrounding circumstances." 14 Am.Jur.2d, Carriers, § 1046, pp. 465–66.

*See* Hoskins v. Albuquerque Bus Co., 72 N.M. 217, 382 P.2d 700 (1963); United States v. DeBack, 118 F.2d 208 (9th Cir. 1941); Van Cleave v. Illini Coach Co., 344 Ill.App. 127, 100 N.E.2d 398 (1951); Wilcoxen v. City of Seattle, 32 Wash.2d 734, 203 P.2d 658 (1949); Oklahoma Ry. Co. v. Kelley, 204 Okl. 268, 229 P.2d 182 (1951); Oklahoma Transp. Co. v. Claiborn, 434 P. 2d 299 (Okl.1967); Mudrick v. Market St. Ry. Co., 11 Cal.2d 724, 81 P.2d 950 (1938). Since appellant alleges in his complaint and affidavits that he was ejected from his seat with sufficient force to hit the ceiling, sustaining serious injuries as a result thereof, and since appellant claims this ejection was caused by a "severe bump," the doctrine of res ipsa loquitur should be applied in the trial.

Along with his challenge of the summary judgment order, appellant raises two additional procedural points in this appeal. Appellant contends that the district court erred in (1) not requiring Mr. Denning, an employee of respondent, to answer interrogatories directed to him by appellant, and (2) in refusing to require respondent to respond to appellant's request for admissions sought under I.R.C.P. Rule 33.

■ In regard to the interrogatories dispute, I.R.C.P. Rule 33 is dispositive. That rule provides in pertinent part:

"Any party may serve upon any adverse party, who has been served with process or who has appeared, written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association, by any officer or agent, who shall furnish such information as is available to the party."

Under Rule 33, patterned after Federal Rule 33, Fed.R.Civ.Proc., it is generally the rule that an interrogatory to a corporate party is not properly addressed to an employee of the corporation, and that the corporation has the right to select which of its officers or agents shall answer interrogatories directed to the party corporation. 8 Wright & Miller, Federal Practice and Procedure, §§ 2171–2172, pp. 530–39 (1970); F. James, Civil Procedure § 6.4, p. 189 (1965); Holland v. Minneapolis-Honeywell Regulator Co., 28 F.R.D. 595 (D.D.C.1961). It is, of course, incumbent on the corporation to select someone who can furnish the requested information. *See* 8 Wright & Miller, *supra*, at 538–39. Respondent, therefore, properly disregarded appellant's direction that the interrogatories were intended for respondent's employee, Mr. Denning, and also properly selected its president, Mr. Rice, to answer the interrogatories.

■ Appellant raises a further assignment of error as a result of the district court's refusal to require respondent to answer appellant's request for admissions. Respondent objected on the ground that all of the information contained in the request for admissions was contained in respondent's answers to interrogatories. The trial court in denying the request for admissions stated that it felt " . . . that the admissions are not necessary to a determination of plaintiff's rights nor would appreciable time in the event of trial be saved by such admissions." The admissions generally all relate to the operation of the buses by respondent and the means and manner of obtaining tickets, reporting highway and bus conditions, and other related information. *All of these facts will be relevant to* the issue of the standard of care required of respondent on the retrial of this case, and the request for admissions should be answered. The mere fact that the same information is contained in respondent's answers to interrogatories is not controlling since the purpose of interrogatories is discovery of facts, while the request for admission goes to the question of proof of those facts at trial and the elimination of the necessity of appellant's calling the employees of respondent in order to introduce testimony and documents to prove those facts. *See* Electric Furnace Co. v. Fire Ass'n of Philadelphia, 9 F.R.D. 741 (N.D. Ohio 1949). Upon remand the respondent should be required to answer the request for admissions.

Reversed and remanded for trial. Costs to appellant.

McQUADE, C. J., DONALDSON and SHEPARD, JJ., and CALLISTER, D. J., concur.