865 P.2d 950

**BECO CONSTRUCTION COMPANY, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**CITY OF IDAHO FALLS, a municipal corporation, Defendant– Respondent.**

No. 19698.

Supreme Court of Idaho, Idaho Falls, April 1993 Term.

Dec. 22, 1993.

Fuller, Carr & Parry, Idaho Falls, for appellant. Mark R. Fuller, argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondent. Donald L. Harris, argued.

TROUT, Justice.

Beco Construction Company, Inc. (Beco) submitted the low bid on two construction projects. The City of Idaho Falls (City) rejected both of Beco's bids because of what the City deemed Beco's poor performance on an unrelated project. One of the bids was rejected on the additional ground that Beco failed to follow bid specifications. Beco appeals from the dismissal of its suit on the City's motion for summary judgment.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

In 1986 and 1987, Beco submitted two construction bids on public works projects let for bid by the City. The projects on which Beco bid were the Rollandet Asphalt Overlay Project (Rollandet Project) and the Skyline Road Improvement Project (Skyline Project). Beco was the low bidder on both projects.

The City rejected Beco's two bids because of what the City considered Beco's poor performance on an unrelated project, the Bel–Aire Waterline Project (Bel–Aire Project). The Skyline Project was also rejected on the additional ground that Beco failed to follow . bid specifications and submit forms for Minority Business Enterprise, Womens Business Enterprise and Equal Employment Opportunity. These forms were required by the federal government which, through the Federal Aviation Administration, was supervising and paying ninety percent of the Skyline Project.

In 1989, Beco sued the City alleging that it submitted the low bid on each project which the City rejected without reasonable or just cause. Beco alleged the City's rejection of its bids constituted bad faith. Beco later amended its complaint to include a claim that the City abused the process of the court in a civil action arising out of the Bel–Aire Project. Beco alleged the City filed a complaint and sought discovery in the Bel–Aire action for the improper purpose of substantiating a complaint against Beco pending before the Public Works Contractors State License Board (Board).[1]

Beco's motion for summary judgment was denied. The trial court held that as a matter of law, state law did not preclude the City from determining whether a contractor was the "lowest responsible bidder" under I.C. § 50–341(C)[2].

The City's motion for summary judgment was granted. The trial court found that pursuant to I.C. § 6–904(3)[3], the City was

---

1. A jury found in favor of the City on its breach of contract action against Beco in connection with the Bel–Aire Project. The trial court granted Beco's motion for a judgment n.o.v. ruling that the jury had improperly apportioned liquidated damages. The City appealed and this Court vacated the trial court's judgment n.o.v. entered in favor of Beco. *See City of Idaho Falls v. Beco Construction Co.*, 123 Idaho 516, 850 P.2d 165 (1993).

2. I.C. § 50–341(C) provides: "When the expenditure contemplated exceeds five thousand dollars ($5,000), or ten thousand dollars ($10,000) if for equipment, the expenditure shall be contracted for and let to the *lowest responsible bidder.*" (Emphasis added).

3. I.C. § 6–904(3) provides that: "A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which ... [a]rises out of assault, battery, false imprisonment, false arrest, malicious prosecution, *abuse of process*, libel, slander,

immune from liability for the abuse of process claim because there was no evidence that the City directed its attorney to take any action which constituted abuse of process. The trial court denied the bad faith claims on the ground that the relationship between the parties was not one which gave rise to the tort of bad faith. The trial court further held that the City properly exercised its discretion in determining that Beco was not a "responsible" bidder within the meaning of I.C. § 50–341(C) and Beco had not presented any evidence that the City abused its discretion. Finally, the trial court held that Beco's failure to complete the forms required by the Federal Aviation Administration constituted a material variance in the bid requirements for the Skyline Project and the City did not have authority to waive these requirements.

Beco appeals from the order granting the City's motion for summary judgment and raises the following issues: (1) is the City "preempted" by state law from determining the "responsibility" status of a public works contractor; (2) does I.C. § 6–904(3) immunize the City from liability for abuse of process; and (3) does a cause of action for breach of the covenant of good faith and fair dealing exist in the area of public competitive bidding.

## II.

## A CITY HAS THE AUTHORITY TO DETERMINE WHETHER A PUBLIC WORKS CONTRACTOR IS A "RESPONSIBLE BIDDER" UNDER I.C. § 50–341

■ Beco argues that state law "preempts" the City from determining whether a licensed public works contractor is a responsible bidder under I.C. § 50–341. Beco acknowledges that I.C. § 50–341(C) provides that the "lowest responsible bidder" shall be awarded public works contracts.

Beco contends, however, that a city does not have the authority to determine whether a contractor is responsible since a detailed statewide licensing scheme regulates who qualifies as a responsible bidder.

In support of the above argument, Beco cites authority which discusses preemption within the context of conflicting state and local regulations. We find Beco's recitation of this authority unavailing in light of the fact that I.C. § 50–341, and the statutes contained in the Public Works Contractors License Act, Title 54, Chapter 19, Idaho Code (the "Act") are all state statutes. As to possible conflicts or inconsistencies between laws passed by the same governmental entity, the doctrine of preemption does not apply. Nevertheless, we will address the issue, as framed by Beco, by analyzing the relationship between I.C. § 50–341 and the Act.

### A. Idaho Code § 50–341

Idaho Code § 50–341 is the competitive bidding statute applicable to all cities in the state of Idaho. This statute requires a city to award a public works contract "to the lowest responsible bidder" when the contract amount exceeds five thousand dollars or ten thousand dollars if for equipment. I.C. § 50–341(B)–(C).

In *Seysler v. Mowery*, 29 Idaho 412, 416–17, 160 P. 262, 263 (1916), the Court considered the statutory predecessor to I.C. § 50–341 [4]. This statute provided that a city shall make all contracts for improvements "with the lowest and best responsible bidder." The Court discussed the rationale of the legislature in enacting this statute:

It was manifestly the purpose of the legislature, in enacting the foregoing provisions, to procure competitive bidding for contracts for making public improvements of the kind here under consideration and thereby to safeguard public funds and prevent favoritism, fraud and extravagance in

misrepresentation, deceit, or interference with contract rights." (Emphasis added).

4. The former statute was part of chapter 5, title 13 of the Political Code and in pertinent part provided: "All contracts which are made by the city or village for any improvements ... shall be

made by the council in the name of the city or village upon such terms of payment as shall be fixed by the council, and shall be made with the *lowest and best responsible bidder*...." Rev. Codes § 2238, subdb. 15 (Sess.Laws 1915, p. 231) (emphasis added).

their expenditure, and it is equally clear that it was the legislative intent that a contract of the kind here proposed to be entered into must not be let to any other than the lowest bidder unless some fact, or facts, exist by reason of which a bid, other than the lowest, has been made by one who is, even though higher in price, the best responsible bidder.

*Id.* at 416–17, 160 P. at 263.

*Seysler* acknowledged that the governing board of a municipality may exercise discretion in selecting the "lowest responsible bidder" or "lowest and best bidder" so long as the entity awarding the contract does not "exercise the discretion entrusted arbitrarily, and without reason reject the lowest bid and accept a higher one." 29 Idaho at 417, 160 P. at 263, *citing Caldwell v. Village of Mountain Home,* 29 Idaho 13, 156 P. 909 (1916).

The rationale of *Seysler* is equally applicable to the statute in its present form and is not diminished by the difference between the language of the former statute which provides that a contract should be awarded to the "lowest and best responsible bidder" and the language of the current statute which provides for the award of a contract to the "lowest responsible bidder." Any distinction between this subtle difference in wording was abrogated by the reliance of the Court in *Seysler* on *Caldwell* and two extra-jurisdictional cases which discuss awarding bids to the lowest responsible bidder.

## B. The Act

The general subject of the Act, adopted by the legislature in 1941, is contained in the title of the bill which enacted the legislation. The pertinent parts of this title are as follow:

> to provide for the regulation and licensing of [public works] contractors; making it unlawful to engage in public works contracting without a license; prescribing exemptions; creating a public works contractors state license board; ... providing the qualifications of public works contractors; providing the method of issuance, renewal, suspension and revocation of licenses and procedure therefor[e]. ...

1941 Idaho Sess.Laws, ch. 115, p. 212; *see also* Idaho Const. art. 3, § 16 ("[e]very act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title"); *State v. O'Bryan,* 96 Idaho 548, 555, 531 P.2d 1193, 1200 (1975) (title to a legislative act must set forth the general subject, but need not serve as a catalogue or index to the subject matter).

The Act has at various times been amended since its inception in 1941. The general subject matter identified in the title has, however, remained unchanged and we find nothing in the general subject matter which conflicts with a city determining whether a contractor is responsible under I.C. § 50–341.

Beco argues that certain statutes within the Act conflict with allowing a city to determine whether a contractor is responsible under I.C. § 50–341. Specifically, Beco identifies I.C. §§ 54–1902, –1904, –1907, –1910, –1915 to –1919 and –1926 as obviating the need for a city to determine whether a contractor is responsible.

The relevant portions of these statutes, as identified by Beco, are as follows: (1) I.C. § 54–1902 provides that it is unlawful to engage in the business of a public works contractor without a license; (2) I.C. § 54–1904 describes the different classes of licenses including a class "AAA" license awarded to "[a]ny contractor whose qualifications, ability and responsibility to execute contracts for public works involving any estimated cost of more than $1,000,000 ...."; (3) I.C. § 54–1907 describes the duties and powers of the Public Works Contractors State License Board, namely the administration of the Act; (4) I.C. § 54–1910 empowers the Board to investigate, classify and to qualify applicants for licenses and it describes the required qualifications of a license applicant; (5) I.C. §§ 54–1915 to –1919 provide for the suspension and revocation of a contractor's license; and (6) I.C. § 54–1926 requires a contractor to post performance and payment bonds prior to contracting for any public building or public works.

We do not agree that the statutes enumerated above are inconsistent with allowing a

city to determine whether a contractor is the lowest responsible bidder. The purpose of the above statutes is to provide for the licensing and discipline of a public works contractor as well as to require the posting of certain bonds prior to contracting. On the other hand, the purpose of I.C. § 50–341, as noted in *Seysler*, is to safeguard public funds by insuring the lowest responsible bidder is awarded a public works contract.

A contractor bidding on a public works project should not automatically be considered a responsible bidder by virtue of the fact that the contractor is licensed. It is conceivable, for example that since the time of licensing, a contractor's circumstances may have changed or a contractor may have demonstrated an inferior work record. A change of circumstances or an inferior work record would not automatically subject a contractor to a disciplinary proceed where that contractor's license would be revoked or suspended. Furthermore, the mere posting of performance and payment bonds does not protect against the time and expense of attempting to correct or seek a remedy for defective work performed by a licensed contractor who submitted the lowest bid on a public works project.

We therefore hold that under I.C. § 50–341, and consistent with *Seysler*, local governmental entities are afforded the sound discretion to determine whether a bidder is "responsible." Because Beco has not raised this issue on appeal, we do not consider whether the City abused its discretion in denying Beco's bids on the Skyline and Rollandet projects.

### III.

### THE TRIAL COURT PROPERLY FOUND THAT THE CITY WAS IMMUNE FROM LIABILITY ON THE ABUSE OF PROCESS CLAIM

Beco alleges in its amended complaint that the City, acting through the city attorney, abused the process of the court by filing a civil action in connection with the Bel–Aire Project on the same day it filed a complaint before the Board. Beco further alleges that the City abused the process of the court by using discovery obtained in the Bel–Aire civil action to support its complaint before the Board. In support of this allegation, Beco alleges the city attorney took a deposition and obtained documents through discovery which were not admitted as exhibits at trial in the Bel–Aire case but were used before the Board to support the City's complaint in the disciplinary proceeding.

The trial court held that the City was immune from liability pursuant to I.C. § 6–904(3), and could only lose this immunity if the City itself acted out of malice and commanded the city attorney to engage in conduct which constituted abuse of process. The court found that there was no evidence that the City directed the city attorney to engage in a course of discovery which amounted to abuse of process and secondly, there was no evidence that the City brought the Bel–Aire action for any reason other than to seek a remedy for breach of contract.

On appeal, Beco acknowledges that I.C. § 6–904(3) immunizes the City from liability on the abuse of process claim if the City acted without malice or criminal intent. Beco, however, argues that there is a genuine issue of material fact as to whether malice existed.

The essential elements of abuse of process are: (1) an ulterior, improper purpose; and (2) a wilful act in the use of the process not proper in the regular conduct of the proceeding. *Badell v. Beeks,* 115 Idaho 101, 104, 765 P.2d 126, 129 (1988). "A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which … [a]rises out of … abuse of process." I.C. § 6–904(3). A governmental entity may "refuse to pay any judgment for its employee if it is determined that the act or omission of the employee was not within the course and scope of his employment or included malice or criminal intent." I.C. § 6–903(c). Thus, Beco could not prevail against the City for abuse of process unless the city attorney, acting within the course and scope of his employment and at the malicious direction of the City governing authority, had an ulterior,

improper purpose and wilfully used process improperly in the regular conduct of a proceeding.

Initially we must determine if, in construing the evidence at the time of summary judgment, a triable issue of fact existed as to whether the City maliciously directed the city attorney to file the civil action and the complaint before the Board on the same day and to conduct the challenged discovery. Malice, as used in foregoing statutes, is defined as "the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended." *Anderson v. City of Pocatello,* 112 Idaho 176, 187–88, 731 P.2d 171, 182–83 (1986).

The longstanding principles by which we review the propriety of the grant of summary judgment were summarized in *Straley v. Idaho Nuclear Corp.,* 94 Idaho 917, 918–19, 500 P.2d 218, 219–20 (1972):

> Summary judgment is properly granted when "the pleadings, deposition, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether any issue of material fact is in dispute, it is well settled that the facts should be liberally construed in favor of the party against whom summary judgment is sought. In light of this rule, this court has held that summary judgment is improper when a conflict in affidavits respecting issues of fact exists, or when the relevant pleading, depositions and affidavits raise any question of credibility of witnesses. On the other hand, a mere scintilla of evidence will not create a genuine issue of material fact sufficient to preclude summary judgment. On appeal from an order granting summary judgment, this court must construe the evidence presented to the district court liberally in favor of the party opposing the order and accord him "the benefit of all inferences which might be reasonably drawn."

(citations omitted); *see also Gunter v. Pocatello School Dist. No. 25,* 123 Idaho 910, 914, 854 P.2d 253, 257 (1993).

▪ Beco argues that a triable issue of fact is created by the deposition testimony of Marvin Hayden which recites a comment by a city councilman and by "a general scheme and course of dealing of the City toward Beco." Even liberally construing the facts in favor of Beco, we are unable to agree that a triable issue of fact exists as to whether the City acted with malice in directing the city attorney to conduct the actions which allegedly constitute abuse of process.

Hayden, an employee of Beco, was deposed by the city attorney on February 26, 1991. Hayden testified that he had a drink with city councilman Sam Sakaguchi sometime after August 1985, at which time the following conversation took place concerning Doyle Beck, the president of Beco:

> Q What was the general conversation about that evening at the Stardust with Mr. Sakaguchi?
>
> A Well, as I remember, we were just talking and I said something about I had went to work for Doyle, and Sam just said, Well, as long as I am on the City Council Doyle won't do no more work for the City. And that was all that was said.
>
> Q Nothing else was said?
>
> A No.
>
> Q Had Mr. Sakaguchi been drinking?
>
> A He was having a drink with me when we were there.

No evidence was offered that Mr. Sakaguchi directed the city attorney to engage in any of the acts which allegedly constituted abuse of process.

We next consider Beco's assertion of a "general scheme and course of dealing of the City toward Beco." Beco alleges that malice is demonstrated by virtue of the fact that on the same day, the City filed a complaint in the Bel–Aire case, filed a complaint before the Board, filed a claim against Beco's surety bond and agreed to comply with Beco's request to inspect public documents. In addition, Beco alleges that certain documents and a deposition obtained through discovery in the Bel–Aire case were not used at the trial of that case, but were used to support the City's complaint before the Board.

Even if we assume arguendo that it was an abuse of process for the city attorney to have filed a complaint before the Board on the same day he commenced a civil action in the Bel Aire case, or it was abuse of process to have used discovery from the civil action in the disciplinary proceeding, the above evidence in no way indicates these actions were conducted at the malicious direction of the City. There is nothing in the above evidence by which one could reasonably infer that conduct which constitutes the abuse of process claim was motivated by ill will on the part of the City. *See Anderson*, 112 Idaho at 188, 731 P.2d at 183. We therefore affirm the trial court's holding that the City was immune from the abuse of process action.

### IV.

**WE WILL NOT CONSIDER WHETHER A CAUSE OF ACTION FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING EXISTS BECAUSE THIS ISSUE IS RAISED FOR THE FIRST TIME ON APPEAL**

■ Beco lists as an issue on appeal that breach of the covenant of good faith and fair dealing should be recognized as a cause of action in the context of public competitive bidding. Nowhere in Beco's amended complaint, however, is this cause of action alleged. Instead, Beco pleaded a cause of action for the tort of bad faith by alleging that the various activities of the City constituted "an act of bad faith." The covenant of good faith and fair dealing is implied in contract not in tort; the breach of which results in contract damages, not tort damages. *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991).

■ While the trial court did consider whether the City breached "the implied contract to consider Beco's bid honestly and fairly," Beco's amended complaint does not contain any allegations of breach of contract, breach of implied contract or breach of the implied covenant of good faith and fair dealing. In *Gardner v. Evans*, 110 Idaho 925, 939, 719 P.2d 1185, 1199 (1986), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701, the Court held:

> It has been the rule in Idaho that "issues considered on summary judgment are those raised by the pleadings." The facts of this case show that the issue of defamation has in no way been raised by the pleadings; there is nothing within the pleadings which can fairly be viewed as adequately giving notice of the claim. We accordingly decline to rule on this claim at this late date. (Citations omitted).

Thus, a cause of action not raised in a party's pleadings may not be considered on summary judgment nor may it be considered for the first time on appeal. *See also Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 93, 803 P.2d 993, 999 (1991) (ordinarily, issues not raised below and presented for the first time on appeal will not be considered or reviewed); *Laight v. Idaho First Nat'l Bank*, 108 Idaho 211, 214, 697 P.2d 1225, 1228 (Ct.App.1985) (issue raised for the first time on appeal has no effect on validity of summary judgment).

Based on the foregoing, the issue of whether Beco can sustain a cause of action for the implied covenant of good faith and fair dealing has not been properly preserved for appeal.[5]

### V.

**ANY ISSUES RELATING TO THE TORT OF BAD FAITH ARE LIKEWISE NOT PROPERLY BEFORE THIS COURT ON APPEAL**

■ Beco's amended complaint specifically alleged that the City rejected Beco's bids

---

5. We note the facts in the instant case are distinguishable from those in *Northcutt v. Sun Valley Co.*, 117 Idaho 351, 356, 787 P.2d 1159, 1164 (1990). In *Northcutt*, the plaintiffs did not present an issue to the trial court, but the Court addressed the issue because it had been presented to the trial court by the defendant and ruled upon by the trial court. Significant to the holding in *Northcutt* is the fact that the issue was raised by the defendant who could thereafter not claim inadequate notice. In contrast to *Northcutt*, Beco's amended complaint did not allege breach of the implied covenant of good faith and fair dealing, and therefore did not adequately give the defendant City, notice of this claim. *See Gardner*, 110 Idaho at 939, 719 P.2d at 1199.

"without reasonable or just cause and that such rejection was an act of bad faith." In its brief Beco lists only an issue relating to breach of the covenant of good faith and fair dealing. As indicated in Part IV., this is a separate and distinct cause of action from the tort of bad faith. In its argument relating to breach of the covenant of good faith and fair dealing, Beco sporadically refers to the "tort of bad faith". Beco then asserts that: "[I]t is this contract damages issue which is the basis of Beco's bad faith claim". Clearly, whatever phrase is employed, Beco in fact is asserting a violation of the covenant of good faith, not the tort of bad faith. In *State v. Prestwich*, 116 Idaho 959, 961, 783 P.2d 298, 300 (1989), *overruled on other grounds* in *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992), the Court held that it may relax the general rule that it will not consider issues on appeal which are not included in the appellant's statement of issues when the issue is addressed by authorities cited or arguments contained in the briefs. In the instant case, however, there is no clear indication or argument that Beco indeed intends to assert the issue of tortious bad faith on appeal. For this reason we decline Beco's invitation to address that issue.

## VI.

### CONCLUSION

The order of the trial court granting the City's motion for summary judgment is affirmed. No attorney fees are awarded on appeal. Costs are awarded to the City.

McDEVITT, C.J., and BISTLINE, JOHNSON and SILAK, JJ., concur.